## JOHN SPARKS ET AL. v. FLORENCE L. TAYLOR.

### No. 1488. Decided January 8, 1906.

**1.—Lis Pendens—Citation.**

The doctrine of notice by lis pendens does not apply until citation has been served on the defendant. (P. 421.)

**2.—Divorce—Alienation of Property—Burden of Proof.**

The restriction of alienation of lands by the husband on or after the day suit for divorce was filed against him (Rev. Stat. art. 2893) does not attach till the suit is filed, and where conveyance was on the same day the party rely—

ing on such restrictions has the burden of proving the deed to have been made after suit was filed. (P. 421.)

### 3.—Trust—Innocent Purchaser of Legal Title.

Evidence considered and held to establish good faith, absence of notice, and payment of a valuable consideration entitling the purchaser of the legal title of land from the husband to prevail over the equitable one of a trust existing in favor of the wife. (Pp. 421, 422.)

### 4.—Payment—Deposit—Passing Beyond Control.

Purchasers of land from the agent of the holder of legal title deposited in bank a draft for the purchase money, to be delivered to the seller when he should make deed; the owner had, before learning of this sale, deeded the land to another, but procured him to accept the amount and make deed to those purchasing from the agent; this he did, sending deeds to the bank, which thereupon, with consent of the payee, placed the amount of the draft to his credit; the agent then notified the bank to hold the draft till his commission was paid; both deeds and money were so held in bank at the time the purchasers obtained notice of an equitable right to the land in the wife of the former owner; the deeds were subsequently delivered to the purchasers and the money remitted to their immediate grantor; the wife of the original owner then sued for the recovery of the land, claiming an equitable title. Held that the purchasers, having parted with control of the draft before getting notice of plaintiff's rights, were entitled to protection as purchasers paying value without notice, and that the action of the agent in directing the deeds to be held until payment of his commission was unauthorized and did not affect the purchasers' rights. (Pp. 421, 422.)

### 5.—Deposition of Party.

A party whose deposition is taken by his adversary under article 2293, Revised Statutes, is given the right (Rev. Stat., art. 2296) to state any matter connected with the cause and pertinent to the issues; and the fact that his counsel was present and asked questions in answer to which such testimony was given would not be ground for excluding it when offered on behalf of the party testifying, after the adversary had read the answers to the questions he had propounded. A different question would be presented by a motion to quash the deposition. (Pp. 422, 423.)

### 6.—Evidence—Intention—Community or Separate Property.

Where the intention actuating a person becomes material such person may testify what was his intention; but on the issue whether the wife had acquired an equitable interest in property purchased by and conveyed to the husband, by mortgaging her separate property to raise the purchase money, on his promise to have the title made to her, his evidence that he intended to repay that money to her from a contemplated loan he was himself negotiating, was not material to the issue and was properly excluded. (Pp. 423, 424.)

### 7.—Wife's Separate Property—Purchase Money Raised by Mortgage.

Money raised by mortgage of the wife's separate property and the land in which such money is invested, continue separate property of the wife, and not community, as between them, though the husband joined in executing the notes; and where it was done on promise of the husband to take title to the property to be purchased in her name, but he takes it in his own, the wife's interest, to the extent to which she furnished the purchase money, is by express trust. (Pp. 424–427.)

### 8.—Husband and Wife—Contracts—Separate Estate.

The rules defining the extent of the right of husband and wife to make contracts with each other, and of the wife to make contracts with reference to her separate property, summarized. (P. 424.)

### 9.—Cases Discussed.

McBride v. Banguss, 65 Texas, 179; Ullman v. Jasper, 70 Texas, 446; Parker v. Fogarty, 23 S. W. Rep., 700; Schuster v. Bauman Jewelry Co., 79 Texas, 179, followed, and Heidenheimer v. McKeen, 63 Texas, 229, and Canfield v. Moore, 41 S. W. Rep., 718, distinguished. (Pp. 425, 426.)

**10.—Innocent Purchaser—Adjustment of Equities.**

In favor of purchasers who have paid for land in part with and in part without notice of equitable rights of the beneficiary of a trust in it, protection pro tanto will be awarded, and the court has power to adjust the equities; whether by giving the purchasers the proportion of the land paid for before notice, or by awarding them a lien for the sum so paid, or all the land subject to recovery by the trust beneficiary of the amount paid with notice, should depend on the equities of the particular case, and not upon any arbitrary rule. (Pp. 427, 428.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Sherman County.

Florence L. Taylor sued Sparks and others for the recovery of land and obtained judgment, which was affirmed on appeal. Defendants then obtained writ of error.

*Davis & Garnett,* for plaintiffs in error, Meador Brothers.—The court erred in refusing to instruct the jury to return a verdict for these defendants, as requested by them. McAlpine v. Burnett, 23 Texas, 650; Davis v. Rankin, 50 Texas, 286; Lewis v. Cole, 60 Texas, 341; Hill v. Moore, 62 Texas, 610; 2 Pomeroy's Equity, sec. 692; Peterson v. McCauley, 25 S. W. Rep., 829; Halbert v. De Bode, 15 Texas Civ. App., 628; Key v. La Pice, 88 Texas, 209.

The burden of proof being upon the appellant to show that Meador Bros. had notice of her alleged trust at the time of their purchase, and she having failed to introduce any proof to discharge such burden, the court erred in not instructing a verdict for Meador Bros. Same authorities.

As J. W. Taylor unquestionably paid more than half of the purchase money out of his individual funds, and had contracted for the land prior to his marriage, the plaintiff's equity in the land, if any, arising from the use of money derived from the mortgage of her real estate in Toledo, could only extend to an undivided interest in the land so purchased by the said Taylor.

The overwhelming weight of the evidence shows that the money advanced by the plaintiff to her husband, J. W. Taylor, was a loan, to be paid, with interest, and was community property in the hands of the said J. W. Taylor, and the court erred in not setting the verdict of the jury aside because contrary to the law and the evidence. Torrey v. Cameron, 73 Texas, 588; Heidenheimer v. McKeen, 63 Texas, 297; Canfield v. Moore, 16 Texas Civ. App., 474; Boehl v. Wadgymar, 54 Texas, 593; Ross v. Kornrumpf, 64 Texas, 394; Patty v. Middleton, 82 Texas, 586; Herschell v. Blum, 2 Unreported Cases, 265.

The undisputed evidence showing that Taylor had entered into a valid contract for the purchase of the land prior to his marriage, and paid $1,000 of the purchase money, and also paid out of his own funds $4,600 of the remaining $8,600 purchase money, and that the $4,000 raised upon Mrs. Taylor's land in Toledo was so realized from notes signed by J. W. Taylor, constituting a community debt, the court erred in refusing to instruct a verdict in favor of defendants, Meador Bros., as requested. Same authorities.

On the legal effect of the note and mortgage signed by J. W. Taylor

and wife, at Toledo, Ohio, whether it carried a community obligation, we cite the following authorities: 22 Am. & Eng. Enc. Law, 1354; 2 Bishop on Married Women, secs. 578, 585, 586.

*Turner & Boyce,* for plaintiffs in error, Sparks and Taylor.—The court erred in excluding the testimony of defendant, John Sparks, taken by deposition. The evidence offered was relevant and material. The objection urged to it was as to the manner and form of taking, and should have been presented on written motion at first term of the court after depositions were on file. The objection not being so presented, but on oral objection when the testimony was offered, should have been overruled. Lee & Co. v. Stowe & Wilmerding, 57 Texas, 450; Wade v. Love, 69 Texas, 525; Gulf, C. & S. F. Ry. Co. v. Richards, 83 Texas, 207; Wright v. Wren, 16 S. W. Rep., 996; Rev. Stat., art. 2296; Kruger v. Spachek, 22 Texas Civ. App., 308.

The only agreement about which there was any testimony was one alleged to have been made while Taylor was in Toledo, about September 15, 1900. This agreement was void as being a post-nuptial agreement, contemplating the transfer to the separate estate of plaintiff of some $5,000 or $6,000 belonging to the separate and community estate of defendant Taylor, which Taylor necessarily had to put in to complete the cash payment to be made on the land. If made, it was never executed, being repudiated by Taylor when, on November 26, 1900, he took the deed in his own name, in violation of the alleged agreement.

Regarded as a gift of the money that Taylor was to put into said land, said "agreement" was inoperative for the reason that it was not executed. Cox v. Miller, 54 Texas, 16; Bruce v. Kock, 40 S. W. Rep., 626; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 627; Proetzel v. Schroeder, 83 Texas Rep., 687; Engleman v. Deal, 37 S. W. Rep., 652; Green v. Ferguson, 62 Texas, 528; Speer on Law of Married Women, sec. 278.

Before plaintiff could recover the land, the burden of proof was upon her to show that the defendant Sparks was not a bona fide purchaser for valuable consideration; and the charge is erroneous because it authorizes a recovery against said defendant Sparks without requiring a finding to that effect by the jury, thereby assuming that said Sparks was not an innocent purchaser for value. McAlpine v. Burnett, 23 Texas, 650; Taylor v. Taylor, 29 S. W. Rep., 1058.

The $5,000 borrowed in Toledo, Ohio, under the circumstances of its acquisition, became community property, and the property purchased with it was community property. Even if the alleged "agreement" as to the title to the Sherman County property can be held valid, the overwhelming weight of the testimony is to the effect that no such "agreement" was made. Herschell v. Blum, 2 Unreported Cases, 265; Heidenheimer Bros. v. McKeen, 63 Texas, 297; Goddard v. Reagan, 8 Texas Civ. App., 274; Torrey v. Cameron, 73 Texas, 588; Speer on Law of Married Women in Texas, secs. 142, 143, 184 and 228.

*M. W. Stanton* and *J. W. Veale,* for defendant in error.—The anomalous and extraordinary proceedings as shown by defendants' bill of exceptions, which was appended to the ex parte depositions of the defend-

ant Sparks, was wholly without authority of law, in that under the statute of Texas neither the officer nor any one else present had authority to propound, or permit the attorney of defendant Sparks then present to propound, interrogatories to Sparks, or to take or certify to his answers to such interrogatories, and said proceeding was therefore wholly nugatory and void. Rev. Stat., arts. 2293, 2295, 2296, 2298.

The undisclosed intention of a party to a suit, who is testifying in reference to a contract and transaction growing out of the payment of money, is not admissible in evidence.

Under the testimony and issue found by the jury to be true, and which were made by the pleadings and proof, the $5,000 raised by plaintiff was her separate property; and in any event, under the express agreement of the parties and declarations of defendant Taylor, upon payment by plaintiff to the defendant Taylor of the $1,000 advanced on the contract of purchase and option by Taylor with Crosby and wife, and appropriation of the $4,000 to the purchase of the thirty sections of land, she, the plaintiff, became the equitable assignee of said contract for purchase of land made with Crosby and wife, and the remainder of the purchase price having been paid from the proceeds of the sale of a part of the thirty sections, all of the property acquired under the Crosby contract was the separate property of plaintiff. Torrey v. Cameron, 73 Texas, 583; Howard v. Zimpelman, 14 S. W. Rep., 61; Moore v. Stone, 36 S. W. Rep., 910; Thompson v. Wilson, 24 Texas Civ. App., 667.

As the uncontradicted evidence shows that the defendant Sparks was not an innocent purchaser for value, and that he participated in and adopted the fraud of the said Taylor in his attempt to deprive plaintiff of the Pan Handle lands and her investment therein, and to force her to pay the $5,000 loan made in Toledo, Ohio, out of other separate property of plaintiff, the court did not err in the instruction complained of by the defendants Sparks and Taylor.

As the testimony discloses that the seven sections of land and the purchase money paid for same was unquestionably the separate property of plaintiff, and that the defendant Taylor had disposed of twenty-three sections of land owned by plaintiff and appropriated the proceeds thereof to his own use, except the amount necessary to pay the balance of the purchase price to Crosby and wife, certainly the plaintiff was entitled to recover the remaining seven sections of land, even though only a part of the purchase price paid to Crosby and wife was the separate property of plaintiff.

As the testimony discloses that the defendants, Meador Bros., had actual notice, and also had notice of facts which put them upon inquiry in reference to the claim of plaintiff and the defect in the title of the defendant Taylor, and in any event of the defendant Sparks, the trial court did not err in submitting the issues of fact thus made to the jury.

*Fiset & McLendon,* also for defendant in error.—Our courts have held generally that agreements between husband and wife will, in proper cases, be enforced by courts of equity (Pearce v. Jackson, 61 Texas, 646; Kendrick v. Taylor, 27 Texas, 695; Ximines v. Smith, 39 Texas,

50), and specifically, as in the case at bar, where there is an express agreement of the parties that the deferred payments are to be made by the wife and the title to be hers, that an express trust is raised in her favor, not only to the extent that her funds were originally used, but for the entire title to the land (Cobb v. Trammell, 30 S. W. Rep., 482; Schuster v. Bauman, 79 Texas, 179). It is immaterial whether this be regarded as an express or constructive trust. Their legal effect would be the same in either case.

The uncontroverted evidence shows that the money was borrowed in Ohio by the wife upon her own note, upon which she personally and her property in that state were bound, and upon a mortgage of her separate property in that state; that the husband only signed said note pro forma; that he was insolvent, and the credit was given to the wife upon the faith of her separate property; and that the money was paid over to the husband in the state of Ohio. That fixed the character of the fund as her separate property, and our courts have held that title to property brought into this state will be determined according to the laws of the state where the title of such property has been already fixed while in such state (Blethen v. Bonner, 93 Texas, 141).

In addition to the authorities cited here and elsewhere by defendants in error, we call to the attention of the court the following very recent Texas cases as authority for one or more of the contentions we have made herein: Matador Land and Cattle Co. v. Cooper, 87 S. W. Rep., 235, where the wife's money enters into the purchase of land, either in whole or in part, a resulting trust at once arises, irrespective of any agreement between the husband and wife. Citing: Parker v. Coop, 60 Texas, 116; Edwards v. Brown, 68 Texas, 334; Blum v. Rogers, 71 Texas, 676; McKamey v. Thorp, 61 Texas, 648; Ross v. Kornrumpf, 64 Texas, 390; Evans v. Wellborn, 74 Texas, 530; Speer on "Married Women," paragraph 239. Lucia v. Adams, 82 S. W. Rep., 335, where property is bought by one person with his own money, but under a parol agreement that he is buying for another to be repaid by him, an express trust is created in the property, although there be no agreement as to the time of payment or rate of interest, and such trust is not within the statute of frauds. Bridges v. West, 80 S. W. Rep., 417, where one wrongfully collects and appropriates money due by an administrator to a distributee, a constructive trust arises. Craig v. Harless, 76 S. W. Rep., 594, trespass to try title may be maintained upon an equitable title. A conveyance absolute upon its face, but made without consideration and merely for convenience in making sales, creates an express trust in the grantor which can be proved by parol.

*James H. Robertson,* also for defendant in error (*Taliaferro & Neill* also filed printed argument).—The contract between Mrs. Taylor and her husband, J. W. Taylor, under which the land in litigation was acquired, being made in Ohio, and being executed there by Mrs. Taylor, should be controlled by the laws of the State of Ohio. Hill v. McDermot, Dallam, 419; Crosby v. Huston, 1 Texas, 235; Gautier v. Franklin, 1 Texas, 736; Schreck v. Schreck, 32 Texas, 588; Cantu v. Bennett, 39 Texas, 310; Amendiaz v. Serna, 40 Texas, 305; Fidelity Mut. Life Ass'n

v. Harris, 94 Texas, 35; Nichols & S. Co. v. Marshall, 108 Iowa, 518; Bowles v. Field, 78 Fed. Rep., 742; Phoenix Mut. Life Ins. Co. v. Simons, 52 Mo. App., 357; Robinson v. Queen, 3 Lawyers' Rep. Ann., 214; Osgood v. Bauder, 1 Lawyers' Rep. Ann., 655.

By the laws of the State of Ohio, as alleged in plaintiffs' pleading and proved at the trial, and found as a fact by the Court of Civil Appeals, it is provided that neither the husband nor the wife has any interest in the property of the other; that they may contract with each other or with any other person with like effect as if unmarried, and that a married woman may buy, hold and dispose of real or personal property the same as if unmarried. Statutes of Ohio, sec. 3111, 12, 14 (Tr. 7-9).

The contract between the defendant in error, Mrs. Taylor, and her husband, made in Ohio, being a valid contract under the laws of Ohio, by which it must be tested, and the same having been executed there by Taylor, will be enforced in Texas. The objection urged that it is invalid because it is not in writing, and that it is a promise of a gift in the future, can not be sustained. The money obtained by the mortgage placed upon the separate property of Mrs. Taylor, under the agreement and contract with her husband that it should be invested in the land in controversy, and that the deed should be taken in her name, and the land be her separate property, did not become community property, but said money remained her individual and separate property, and the land in Texas in which it was invested became also her separate property. Oliver v. Robertson, 41 Texas, 425; McDaniel v. Harley, 42 S. W. Rep., 323; Griffin v. McKinney, 62 S. W. Rep., 81; Speer on Married Women, sec. 208, p. 216.

Even if controlled by the laws of this state, the verbal agreement to turn over the contract for the purchase of the land in controversy to defendant in error, upon the payment of the consideration of $5,000, the money having been paid and the land purchased therewith, should be held to be valid, because the same was an executed contract on the part of Mrs. Taylor, and it would be inequitable and unjust to permit J. W. Taylor to defeat her rights therein, under the facts of this case, by taking the deed to himself, in violation of his contract and in fraud of her rights. Ximines v. Smith, 39 Texas, 50; Hall v. Hall, 52 Texas, 299; Raines v. Wheeler, Exr., 76 Texas, 390; Protzel v. Schroeder, 83 Texas, 687; Dugan v. Colville, 8 Texas, 126; Whitson v. Smith, 15 Texas, 36; Ponce v. McWhorter, 50 Texas, 571; Westfall v. Perry, 23 S. W. Rep., 741; Roberson v. Tonn, 76 Texas, 542; Williams v. Paine, 169 U. S., 55; Williams v. Morris, 95 U. S., 455.

Under the laws of this state, a married woman having capacity to buy, sell and hold property, real and personal, necessarily has power to make a valid contract relating thereto (Pitts v. Elsler, 87 Texas, 347); and the property in question, having been acquired under a contract between defendant in error and her husband that it should be her separate property, it did not become community property. The cases relied upon by plaintiffs in error, to the effect that money raised by a mortgage upon the wife's separate property becomes community property, have no ap-

plication to the facts of this case, because in those cases there was no contract or agreement that either the money so acquired or the property purchased therewith should become the separate estate of the wife, and they are, therefore, at variance with the facts of this case.

The deed from J. W. Taylor to John Sparks, being executed on the 1st day of March, 1902, and it appearing that on that day a divorce suit was filed against J. W. Taylor by defendant in error, in the district court of El Paso County, neither Sparks nor Meador Bros. could defeat the rights of the defendant in error in and to the land in controversy, because, under the provisions of our statute, they took the deed subject to her rights. Art. 2983, Rev. Civ. Stat.; Berg v. Ingalls, 79 Texas, 522; Moore v. Moore, 73 Texas, 382; Speer on Law of Married Women, sec. 340, p. 382.

Even if it shall be held that, notwithstanding the provisions of art. 2983, Rev. Stat., plaintiffs in error will be protected against the claim of defendant in error, if they are shown to be innocent purchasers in good faith, then it is contended—(1) That the deed having been made to Sparks in consideration of a preexisting debt, he could not be held to be an innocent purchaser. (See authorities cited in the opinion of the Court of Civil Appeals in this case, 87 S. W., 743.) (2) That plaintiffs in error, Meador Bros., are not innocent purchasers, because they had notice, actual and constructive, of the claim asserted by defendant in error that the land was her separate property before they paid any money on the land, and before they accepted the deed thereto, and having acted with such notice, the land can be recovered from them by defendant in error. Pearce v. Jackson, 61 Texas, 642; Durst v. Daugherty, 81 Texas, 654; Fraim v. Frederick, 32 Texas, 305; Huyler v. Dahoney, 48 Texas, 234.

If the court shall hold that the land is community property, and this case should be reversed, then we respectfully request that by its opinion the court declare the effect which the lower court should give in another trial to art. 2983, Rev. Stat., as applied to the facts of this case, as the contention of the defendant in error is that the conveyance by J. W. Taylor was made to defraud her in her right in the property in question, and that being able to prove that fact, she should be permitted to set aside the conveyance, and in adjustment of her community rights, recover the property against all of the plaintiffs in error.

BROWN, ASSOCIATE JUSTICE.—On the 3d day of May, 1902, Florence L. Taylor instituted this suit in the district court of Sherman County against J. W. Taylor and John Sparks, to recover from them seven sections of land in controversy in this suit. At a subsequent date, not important to name, the original petition was amended, and T. S. & S. D. Meador, composing the firm of Meador Brothers, were made parties defendant to the suit. The plaintiff's petition is quite voluminous, and, in the view we take of the case, it is unnecessary to state its contents more fully than to say that she claimed as against J. W. Taylor, who was her husband, and the other defendants who claimed under him, that the property in controversy was her separate property, and that J. W. Taylor had induced her to furnish him money with which to ac-

quire the said property under the promise that he would take the deed in her name; but, instead of complying with this promise, he took the deed in his own name, sold a greater part of the property to other persons, and conspired with John Sparks and Meador Brothers to defraud her out of her rights in the said property; and, to accomplish that purpose, J. W. Taylor made a deed to Sparks on the 1st day of March, 1902, and Sparks subsequently conveyed the same property to Meador Brothers. The pleadings of both plaintiff and defendants were sufficient to authorize the introduction of evidence to establish the following facts, and there is evidence in the record which tends to prove the facts hereinafter stated:

On the 16th day of June, 1900, J. W. Taylor, being then unmarried, entered into a written contract with Josiah Crosby and his wife, Josephine Crosby, for the purchase of thirty sections of land in Sherman County, the purchase price being $9,600, of which Taylor at the time paid $1,000 in cash. Afterwards, and in the same month, J. W. Taylor and the defendant in error were married in the state of Michigan; the wife's residence theretofore being at Toledo, Ohio. Mrs. Taylor owned valuable property in Toledo, Ohio, which was her separate estate. Taylor and his wife returned to El Paso, in El Paso County, Texas, and lived together for about sixty days, at the end of which time they separated, and she returned to Ohio. In a short time after that Taylor went to Ohio, where he accomplished a reconciliation with his wife, and induced her to execute a mortgage upon her real estate in Toledo to secure a note for $5,000, signed by himself and her, payable to a bank in that city, for the purpose of getting money to discharge the balance of the indebtedness on the land purchased from Crosby and wife. The $5,000 was raised upon the note and turned over to Taylor. In order to induce his wife to execute the mortgage and the note, Taylor represented to her that he would pay off the balance of the purchase money on the land, using the money procured by her for that purpose, and would take the title to the said land in her name. The parties returned to El Paso, and Taylor paid off the balance remaining of the purchase money due to Crosby and wife, and, on the —— day of November, 1900, Crosby and wife conveyed the thirty sections of land to Taylor. Taylor sold out all of the land except seven sections, without informing his wife of the fact. In February, 1902, Taylor and his wife again separated, and she instituted a suit for divorce against him on the 1st day of March, 1902, in the district court of El Paso County, but Taylor, being absent from the county, was not served with citation for some days thereafter. In the petition for divorce Mrs. Taylor claimed a partition of the property which belonged to herself and her husband, and sued out an injunction to restrain him from selling any of that property. He was notified of the injunction by a message sent to Stratford, in Sherman County, on the 3d day of March, 1902. The injunction also embraced the Lowden National Bank, of El Paso, and restrained it from delivering to Taylor any papers or money in their possession belonging to the said Taylor and wife, or either of them.

On the 15th day of February, 1902, C. F. Rudolph, who was authorized by J. W. Taylor to sell the land in controversy, entered into a writ-

ten contract with Meador Brothers to sell to them the seven sections of land, for the sum of $6,798.50, of which amount Meador Brothers paid $100 in cash, and agreed to pay the balance so soon as an abstract of title was furnished, showing a good title in Taylor to the land, and when Taylor should sign and deliver a warranty deed to them for the seven sections of land. On the 25th day of February, 1902, C. F. Rudolph wrote a letter to T. M. Wingo, the cashier of the Lowden National Bank, at El Paso, stating in effect that he inclosed therewith a deed for the seven sections of land from J. W. Taylor to Meador Brothers, and also inclosed a draft for $5,659.27, and that when Taylor should execute the deed the draft would be credited to his account or order, and the deed sent by the bank either to Rudolph or to Meador Brothers, as the latter might direct. Meador Brothers directed the deed to be sent to them. This letter was accompanied with an abstract of the title and sent to Meador Brothers, instead of the bank. When Meador Brothers received the letter and abstract they submitted the papers to W. O. Davis, an attorney at Gainesville, who pronounced the title good, and Meador Brothers then procured a draft for the amount named in the letter from a bank at Saint Joe, in Montague County, on a New York bank, and inclosed it with the deed and the letter of Rudolph's to the Lowden National Bank, at El Paso, which was received by it in due course of the mail.

On the 1st day of March, 1902, J. W. Taylor was in Stratford, Sherman County, and Rudolph informed him of the contract for the sale of the land to Meador Brothers, when Taylor stated that he had already sold the land to John Sparks, and on that day he made the deed to Sparks for the land, which was recorded in Sherman County on the same day. Taylor said that he would endeavor to get Sparks to convey the land to Meador Brothers, so as to fulfill the contract which Rudolph had made; and in pursuance thereof Sparks did, on the 18th day of April, in the same year, make a deed for the land to Meador Brothers, and sent it to the Lowden National Bank, at El Paso, with instructions to place the money for the purchase of the land to his credit, which that bank did. Rudolph had instructed the bank to pay the money over to Taylor when the deed should be executed and delivered as shown by the letter before given, and Taylor instructed the bank that when Sparks should deliver his deed to the bank conveying the land to Meador Brothers, it should pay the money to Sparks.

Meador Brothers did not know Sparks in the transaction. On the 26th day of April, 1902, Wingo, the cashier of the bank, telegraphed to Meador Brothers at Saint Joe that Sparks' deed was in the bank; to which Meador Brothers replied, inquiring as to what Sparks had to do with the transaction. The bank then telegraphed that "Taylor deeded to Sparks and Sparks to Meador Brothers." This was on the 28th day of April, 1902, and soon thereafter one of the Meador Brothers went to Stratford to look into the matter, and learned that a suit in favor of Mrs. Taylor against J. W. Taylor and John Sparks, for the recovery of the land, was pending in that county. On the 9th day of May, 1902, the bank, upon the request of Sparks, remitted to him the money Meador Brothers had paid for the land.

Meador Brothers did not pay Rudolph's commission, who instructed the Lowden National Bank to hold the deeds from Taylor to Sparks and from Sparks to Meador Brothers until he should direct it to deliver them. The deeds were not delivered until some time in November, 1902, after Meador Brothers had knowledge of this suit.

Citation had not been served on Taylor in the suit for divorce at the time he executed the deed to Sparks; therefore the doctrine of lis pendens does not apply, and it is unnecessary to pay further attention to it. Smith v. Cassidy, 73 Texas, 165.

It is likewise claimed that the deed from Taylor to Sparks was void under article 2983 of the Revised Statutes, which reads as follows: "On and after the day on which the action for divorce shall be brought, it shall not be lawful for the husband to contract any debts on account of the community, nor to dispose of the lands belonging to the same; any alienation made by him after that time shall be null and void, if it be proved to the satisfaction of the court that such alienation was made with a fraudulent view of injuring the rights of the wife." It is unnecessary for us to construe that statute, for the reason that the deed was made and recorded on the same day the suit was filed, and the evidence does not show that the petition was filed at an hour prior to the making and recording of the deed. Clearly it could not be held that a deed delivered prior to the filing of the petition for divorce would be void under that statute, and if the plaintiff claims that the suit was in fact filed before the deed was made, she should have established that fact by evidence.

Meador Brothers have the legal title, and Mrs. Taylor is setting up an equity in the land growing out of a trust relation between her and J. W. Taylor. To entitle her to prevail against Meador Brothers, the evidence must show that the latter are not bona fide purchasers. Barnes v. Jamison, 24 Texas, 362; Balwin v. Root, 90 Texas, 552. "The essential elements which constitute a bona fide purchase are three—a valuable consideration, the absence of notice, and the presence of good faith." (2 Pomeroy's Eq., 3d ed., sec. 746.) Does the evidence show that a valuable consideration was not paid, or that the purchase was not made in good faith, or that Meador Brothers had notice before they paid the price?

There is no evidence in the record which tends to prove either want of good faith on the part of Meador Brothers, or that the consideration paid by them was not valuable, or that it was inadequate. On the contrary, it appears from the evidence that Meador Brothers took the same precaution which is ordinarily observed by purchasers of real estate to ascertain the true character and condition of the title which they were purchasing; and they had every reason to believe, and evidently did believe, that they would in this transaction get a good title to the land. The question of notice to Meador Brothers depends upon the time when they parted with their money in such manner as to place it beyond their control; Meador Brothers claim that payment was made before April 26, 1902, which is strongly contested by counsel for Mrs. Taylor, who contend that the money was not paid until the bank remitted it to Sparks by the draft on the 9th day of May, 1902, prior to which time Meador

Brothers had notice of the pendency of this suit. The evidence in this case shows that Meador Brothers, through Rudolph, deposited in the Lowden National Bank, at El Paso, a draft for $5,659.27, to be paid to Taylor when the latter should execute and deliver to the bank a deed for the land in controversy. Taylor having sold the land to Sparks, induced Sparks to make a deed to Meador Brothers and to receive from the bank the money on deposit to be paid to Taylor. Sparks, in compliance with Taylor's request, made the deed to Meador Brothers, conveying the land to them, and directed that the money should be placed to his credit. Taylor had also directed the bank to place the money to Sparks' credit when he should deliver to it the deed from himself to Meador Brothers. In this transaction Taylor substantially complied with his agreement made through Rudolph, to make and deliver to the bank a deed conveying the land to Meador Brothers, and Taylor was then entitled to receive the money under the former agreement. (Burks v. Watson, 48 Texas, 107.) And Taylor, himself, having given directions that the money should be paid over to Sparks, the latter had the right, upon his compliance with the requirement of making the deed, to appropriate the money, and his order to the bank to place it to his credit was sufficient authority for the bank to do so. Rudolph had no authority to add as a condition precedent to the delivery of the deeds to Meador Brothers that the latter should first pay to the bank or to him the commissions due from them to him. When the contract had been complied with by the delivery of the deeds to the bank for Meador Brothers, and the money had been credited by the bank to Sparks' account, as it had the right to do, the bank then held the deeds for Meador Brothers, which became effective to vest title in accordance with their terms in the vendees named therein. Regan v. Howe, 121 Mass., 424; Baum's Appeal, 113 Pa. St., 58.

There is no evidence whatever which tended to show that Meador Brothers had notice of the claim of the plaintiff prior to the 26th of April, 1902, nor that they had notice of any fact or circumstance which would put them on inquiry as to her title to the land, which inquiry would, if pursued, have given to them information as to her claim. It follows that Meador Brothers were bona fide purchasers of the land, and, to the extent that they had paid the purchase money before April 26, 1902, were entitled to protection against the equity of Mrs. Taylor.

John Sparks and J. W. Taylor joined in an application for writ of error in which they present a number of assignments, some of which we deem it proper to discuss in view of another trial.

The first assignment challenges the ruling of the trial court in excluding from the jury evidence of John Sparks which was taken by deposition under the following circumstances. The plaintiff in the case filed interrogatories to John Sparks under article 2293 of the Revised Statutes, and, when he had answered the interrogatories propounded to him, his attorney, who was present, asked him certain questions in order to call out statements concerning matters pertinent to the issues to be tried and his answers were taken down with the questions, certified to by the notary public, and returned with the deposition. There was no motion to quash the deposition, but after the plaintiff had read the

answers to the written interrogatories, Sparks offered in evidence the answers which he had made to the interrogatories propounded to him by his attorney, to which counsel for Mrs. Taylor objected because: "(1) the evidence was irrelevant and immaterial; (2) it was not given in response to the questions propounded by the plaintiff; (3) it purports to be an ex parte proceeding at which the plaintiff was not present; and (4) it was not taken in accordance with the statute." The trial court sustained the objection and excluded the evidence.

Article 2296 provides as follows: "The party interrogated may, in answer to the questions propounded, state any matter connected with the cause and pertinent to the issue to be tried," etc. It has been held by this court uniformly that the party thus interrogated is entitled to consult with his counsel before he is called upon to answer the interrogatories, if he so desires. If, upon consultation with his attorney, Sparks had, without the presence of the attorney, before the officer taking the deposition, stated the same matter that was stated in his answers, it would have been in accordance with the provisions of the statute. If the plaintiff had moved to quash the deposition because of the presence of the attorney, it would present a different question; but it is unnecessary for us to discuss any phase of the matter which would arise on motion to quash. Testing the objection by the grounds expressed, we think that the evidence was relevant and material. It pertained to matter which was relevant to the issue to be tried, and explained in some measure the testimony already given. It is not necessary that the evidence should be responsive to the interrogatories propounded by the plaintiff, but only that it should be of such matter as pertained to the issue to be tried. The whole proceeding might be termed ex parte. Sparks had no notice of the filing of the interrogatories to him and the plaintiff was not entitled to notice that he would, under the statute, state matters relevant to the issue. The trial court erred in sustaining the objection and excluding the evidence.

The second assignment of error presented in this application complains of the ruling of the trial court in excluding the proposed evidence of J. W. Taylor as to what his intention was at the time he deposited $4,000 of the money obtained by the mortgage in Ohio, in a bank at Toledo, to the credit of his agent at El Paso, Leigh Clark, with instructions to pay it on the contract which Taylor had with Crosby for the purchase of the thirty sections of land. Taylor proposed to state in evidence that it was his intention, after he returned to El Paso, to restore the $4,000 to that fund out of the money that he expected to derive from the negotiation of a $10,000 note in the Lowden National Bank. The plaintiff's counsel objected to the testimony on the ground that it was not competent for Taylor to testify to his intention with regard to the matter. The objection made perhaps does not present the real ground for excluding it, for, if the intention was material to the issue, then undoubtedly he might have stated what his intention was; but, under the facts of the case, if it be true that Taylor agreed with his wife to apply the money in paying for the land for which he had already contracted and that she should have an interest on the entire purchase, then his intention to restore the fund after he arrived in El Paso could not

be of any importance in determining the issue. Indeed, if the theory of Taylor that the fund was community property of himself and his wife be true, we see no reason why he should have restored the money to that fund. The court did not err in excluding the testimony.

The principal point in the defense made by Taylor is that the money raised in Ohio upon a note signed by himself and wife was their community property; therefore the payment of that money on the land did not create a trust in her favor against him. The parties have proved the law of the State of Ohio on the subject of the power of a married woman and her husband to contract with each other, and the plaintiff claims that the contract should be controlled by the law of that state. We do not find it necessary to decide whether the contract should be interpreted by laws of Ohio or Texas, for if the transaction is valid by the laws of Texas, it is unnecessary to resort to the laws of our sister state to determine the validity of the agreement.

Upon a careful examination of the evidence and authorites cited by counsel as well as those we have been able to find, we conclude that if the transaction, claimed by Mrs. Taylor to have occurred between herself and husband, had been consummated in Texas, the money derived from the mortgage on Mrs. Taylor's real estate in Ohio would be her separate property. It follows necessarily that the agreement claimed to have been made by Taylor to invest that money so derived from the land of his wife in a contract already existing for the purchase of thirty sections of land, would create in him an express trust in favor of the wife; and he having used the money in acquiring title to the land, Mrs. Taylor was the equitable owner of it in the proportion that the money she furnished bears to the whole price. Parker v. Fogarty, 23 S. W. Rep., 700; Ullman v. Jasper, 70 Texas, 446; McBride v. Banguss, 65 Texas, 179; Schuster v. Bauman Jewelry Co., 79 Texas, 179; Sinscheimer v. Kahn, 24 S. W. Rep., 533; Aultman, Miller & Co. v. George, 34 S. W. Rep., 652; Cavil v. Walker, 26 S. W. Rep., 854. The cases cited, as well as others which might be referred to, establish as the law in this state these propositions: (1) the husband may enter into contracts with his wife concerning their property rights; he may purchase land from her and may sell land to her; he may borrow money from her and he may pay the debt just as he would to any other creditor; he may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact, his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he can not join her in the conveyance. (2) A married woman may, when joined by her husband, sell or mortgage her separate property; she may with her separate funds buy real or personal property from her husband or another which will be her separate estate; she may borrow money, and, by mortgage, bind her separate estate for its payment, or she may make her separate property surety for her husband's debt or for the debt of a third person with her husband's concurrence. Thus it will be seen that the power of the husband and wife to contract with reference to their property rights is ample to sustain this transaction, and we can see no legal obstacle to the making of such contract in Texas. If the land in

Ohio had been sold instead of being mortgaged, the money derived therefrom would have been the separate property of Mrs. Taylor, and, while Taylor would have had the possession and control of it, he would have been charged as trustee with proper care and investment of it for her; then for what reason can it be said that the money raised by a mortgage upon her property by agreement with the husband should not, at least as between the husband and wife, be her separate property? Is it consistent to say the wife can borrow money on her real estate for her husband or for a third person, but has not the power, with her husband's consent, to borrow money on her own account? Logically the authority which would enable a wife to perform an act for the benefit of another would sustain a like act when done for her own advantage.

In McBride v. Banguss, above cited, Banguss purchased of Blades the tract of land in controversy in that suit and took a bond for title in his own name, the intention being to buy the land for Mrs. Banguss. The cash payment was made with the separate funds of the wife, and it was agreed that she should pay the balance of the purchase money out of her separate estate. In that case Judge Stayton said: "The uncontroverted evidence, however, shows that Banguss never had any real interest in the land, for it was purchased for his wife with the intention that it should be paid for with her separate means, and all the money paid on it prior to the purchase by the plaintiffs is shown to have been of her separate estate. As against her, the plaintiffs took nothing by their purchase, even if they had no notice of her rights at the time of their purchase, for it is not shown that they paid value." (Citing McKamey v. Thorp, 61 Texas, 648.)

In the case of Ullmann v. Jasper, above cited, the husband contracted to buy two lots Nos. 61 and 62 (name of the town not given in report of the case), paying part cash out of his wife's separate funds and giving his note for deferred payment. For convenience the cash payment was applied to one lot only and the deferred payments were made a charge upon the other; the husband gave his note for the purchase money remaining unpaid. In a contest between the creditors of the husband and the vendee of the wife, it was held that lot 62 was the separate property of the wife.

In Parker v. Fogarty, above cited, the subject was carefully and ably discussed, the authorities reviewed by Chief Justice Lightfoot, of the Court of Civil Appeals of the Fifth Supreme Judicial District. In that case the evidence showed that Amanda J. Fogarty bought a tract of land which was deeded to her, she paying $1,000 of her separate funds on the purchase, and, with her husband, executed two promissory notes for the unpaid purchase money with the understanding that she would pay the notes out of her separate funds. She sold the land, and a creditor of John Fogarty having levied upon and sold it, the purchaser at that sale sued the vendee of Mrs. Fogarty for it, claiming that the land was community property of Fogarty and his wife; but the Court of Civil Appeals held that it was the separate property of Mrs. Fogarty.

Mrs. Schuster bought a tract of land paying $100 cash, her separate funds, and she and her husband executed two joint notes for $100 each.

Mrs. Schuster borrowed money and paid the two notes, and then repaid the borrowed money with money belonging to her separate estate. This court held in Schuster v. Jewelry Company, above cited, that the land was the separate property of the wife.

The force of the contention of Taylor and Sparks is that the fact that Taylor signed the note and became personally bound, stamps the money borrowed with the community character; but it is evident that this contention is not sustained by the decisions of this court, for in every case cited above the husband signed notes for deferred payments, and the court held in each case that the fact of agreement that the notes should be paid by the separate funds of the wife fixed upon the land purchased the character of separate property, the controlling facts being the intention of the parties and the investment of the wife's separate funds. Upon a better and broader foundation we rest our conclusion that the fact of intention of the parties that the debt should be paid with Mrs. Taylor's separate funds, and the securing of the note on her land, impressed upon the money borrowed upon the mortgage the character of the security, the separate estate of the wife.

Taylor and Sparks rely upon the cases of Heidenheimer v. McKeen, 63 Texas, 229, and Canfield v. Moore, 41 S. W. Rep., 718, to sustain the proposition advanced by them, that the money, which was raised by Mrs. Taylor through the mortgage of her real estate, became the property of the community estate of herself and husband. We think that there is a clear distinction between those cases, when properly understood, and the authorities that we have cited. In Heidenheimer v. McKeen, the facts are not stated sufficiently to enable us to gather the real scope of the decision, but the court makes this statement: "Counsel claim that as the merchandise was purchased with money which was borrowed upon the faith of her separate property as surety, that therefore the money, as well as the merchandise in which it was invested, became her separate property." From this we understand that the husband borrowed money with which to buy the merchandise, and the wife became his surety, so to speak, by the execution of a mortgage upon her real estate to secure the note made to him. The difference is that in that case it was distinctively the debt of the husband without any agreement or understanding that the money was to be the property of the wife, or that it should be used for her benefit, while in this case the wife borrowed the money to be used for her and the husband signed the note as a matter of form; his liability was secondary to the land. In Canfield v. Moore, the question here involved was referred to by the learned judge who wrote that opinion, and it was stated that the money borrowed in that instance through a mortgage upon the property of the wife belonged to the community estate, but in fact the question was not before the court; therefore the statement is dictum. The Western Securities Company had a mortgage upon the land of Mrs. Canfield, and also a chattel mortgage upon the crop grown upon that land, to secure a debt due to it from Canfield. Another creditor levied upon the grain and sold it, thereby destroying the security to that extent. The court said: "The company was a mortgagee out of possession at the date of the levy and sale. It was not

thereby injured for the real estate security exceeded in value the amount of its debt. Unless damaged it had no cause of action and could transfer none to Mrs. Canfield." Thus it will be seen that if the funds with which Mrs. Canfield paid off the debt due to the Western Securities Company had been her separate property, she would have had no cause of action, because the Western Securities Company had none. Application for writ of error in that case was refused, but that did not operate to approve the dicta in the opinion.

The judgments of the district court and the Court of Civil Appeals are reversed, and this cause is remanded to the district court to be tried under the following instructions:

Meador Brothers are entitled to protection as innocent purchasers of the land to the extent that they paid the purchase money before receiving notice of the equity of Mrs. Taylor; but for so much of the purchase money as was paid after they received notice of her right, they must account to Mrs. Taylor in such manner as shall be adjudged by the court in the final settlement of the equities of the parties. Tillman v. Heller, 78 Texas, 597; Durst v. Daugherty, 81 Texas, 650. The district court has ample power to adjust the equities between all parties according to the circumstances as they may appear upon another trial. 2 Pomeroy's Eq., sec. 750; Freeman v. Pullen, 130 Ala., 654; Youst v. Martin, 3 Serg. & R., 432; Balwin v. Sager, 70 Ill., 509. The rules by which the equities between Mrs. Taylor and Meador Brothers must be adjusted are well stated in Durst v. Daugherty, before cited, in this language: "The pro tanto protection accorded an innocent purchaser is so well recognized by American courts that we deem it unnecessary to cite authority in support of the right. The difficulty lies in the application of the rule, and how the relief should be administered. Some of the courts adopt that rule that allows the innocent purchaser to retain of the land purchased the proportion paid for. Some admit a lien in favor of the innocent purchaser upon the land for the amount of the purchase money paid. Other courts give to the innocent purchaser all the land, with a right in the real owner to recover from him the purchase money unpaid at the time of notice. In determining which of these rules should be applied in any case it is necessary to ascertain the equities, if any, of the respective parties. For in the application of these rules the adjustment of the equities of each given case is the primary object to be accomplished. The rule that should be applied in one case may be inequitable if applied to another. Consequently it is not proper that a court select one rule to the exclusion of the others as a rule that should govern alike in all cases. In ascertaining what the equities of the parties are it is permissible to inquire into the price paid for the land by the innocent purchaser, and if or not he has placed upon the land permanent and valuable improvements, and if or not the land, situated as it is at the time, is in a condition to be partitioned or divided so that it would not affect or destroy its usefulness and render it of little or no value to either party, or if a partition could be had without injury to the innocent purchaser."

In order for Mrs. Taylor to recover against Sparks, she must establish her right in the land as against Taylor; also that Sparks conspired with

Taylor to defraud her out of her interest in the land, and that in order to accomplish that fraudulent purpose, he received the deed from Taylor to himself, and made the deed to Meador Brothers.

If Mrs. Taylor shall establish her equity in the thirty sections of land as she claims, and if Taylor has sold, as appears to be undisputed, all of the land but the seven sections in controversy, then Mrs. Taylor is entitled to be reimbursed by Taylor for her interest in the thirty sections; but could in no event recover of Sparks more than the value of the seven sections conveyed to him.

*Reversed and remanded.*