HINES v. MEADOR et al.  (No. 1109.)

(Court of Civil Appeals of Texas. Amarillo.
Feb. 14, 1917. Rehearing Denied
April 11, 1917.)

1. APPEAL AND ERROR ☞1097(5)—REVIEW—
LAW OF CASE.

A determination of the Court of Civil Appeals, in a former appeal in the same case, which was upheld by the Supreme Court, becomes the law of the case.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4364.]

2. HUSBAND AND WIFE ☞129(3)—GROUNDS
—AS BETWEEN INNOCENT PARTIES.

Under the rule that, when one of two innocent parties must suffer, he who placed the wrongdoer in a position to defraud must suffer, a wife, who allowed her husband to take title to land in his own name, thus enabling him to dispose of it to bona fide purchasers without knowledge of her equity, must suffer.

[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. § 470.]

3. PLEADING ☞253—DENIAL—AMENDED PE-
TITION.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1908, providing that, where the defendant has pleaded a general denial and plaintiff shall afterwards amend his pleadings, it will not be necessary for plaintiff to plead such denial a second time, a defendant who had pleaded a general denial does not, where plaintiff filed an amended petition, admit all facts not specially denied upon filing special denials.

[Ed. Note.—For other cases, see Pleading,
Cent. Dig. §§ 744–751.]

4. APPEAL AND ERROR ☞1099(11) — NEW
TRIAL ☞172—FINDINGS ON FORMER TRIAL
—FORCE.

While the Court of Civil Appeals takes judicial notice of proceedings on a former appeal and the facts proven on a former trial, neither it nor the trial court is bound by the findings of the jury on the former trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. § 4378; NewTrial, Cent.Dig. § 339.]

5. EVIDENCE ☞43(2)—JUDICIAL NOTICE.

The Court of Civil Appeals will take judicial notice of the record on a former appeal and of the facts proved on a former trial.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 63; Appeal and Error, Cent. Dig.
§ 2959.]

6. VENDOR AND PURCHASER ☞239(1)—BONA
FIDE PURCHASER—RIGHTS.

Where plaintiff's husband, who took in his own name title to land purchased with her funds and disposed of it to bona fide purchasers, who were entitled to protection according to the amount of payments made by them, their rights to the land pro tanto must be measured by the contract price at which it was sold.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. § 594.]

7. VENDOR AND PURCHASER ☞239(1).—BONA
FIDE PURCHASERS—RIGHTS OF.

Where plaintiff's husband, who bought lands with her funds, took title in his own name, and then sold it to defendants, who were bona fide purchasers, defendant's rights are not affected because the amounts the husband agreed to pay the broker were exorbitant.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. § 594.]

8. VENDOR AND PURCHASER ☞239(1) — BONA
FIDE PURCHASERS—RIGHTS OF—DEMAND OT
PAYMENT.

Where plaintiff furnished funds and her husband took title to land in his own name and then disposed of it to bona fide purchasers who paid part of the consideration, such purchasers being protected are not bound in order to preserve their rights to demand reimbursement from plaintiff on her assertion of ownership.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. § 594.]

9. VENDOR AND PURCHASER ☞239(1)—RIGHTS
OF—PRESERVATION.

The law does not require any one to do a useless thing, and, therefore bona fide purchasers from plaintiff's husband, who had taken in his own name title to land purchased with her funds, need not tender plaintiff any balance due.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. § 594.]

10. TAXATION ☞531(1)—PAYMENT OF TAXES
ON ANOTHER'S LAND—INTEREST.

Where defendants paid taxes which became a lien on plaintiff's land and were for her benefit, plaintiff having made no offer to reimburse them, defendants are entitled to interest.

[Ed. Note.—For other cases, see Taxation,
Cent. Dig. § 986.]

11. APPEAL AND ERROR ☞984(1)—COSTS ☞
12—DISCRETION OF TRIAL COURT—REVIEW.

The matter of taxing costs is ordinarily one of discretion with the trial court, not subject to review unless abused.

[Ed. Note.—For other cases, see Appeal and Error, Cent. .Dig. §§ 3881, 3883–3885, 3887; Costs, Cent. Dig. §§ 20, 22, 23.]

12. VENDOR AND PURCHASER ☞243 — BONA
FIDE PURCHASER—RIGHTS.

Where plaintiff's husband took title in his own name to land purchased with her funds and disposed of it to defendants, who were bona fide purchasers, evidence as to a subsequent divorce plaintiff secured from her husband, etc., is not admissible in a suit between the parties.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 606–608.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action between Florence L. Taylor Hines and S. D. Meador and others. From a judgment for the latter, the former appeals. Affirmed.

M. W. Stanton, of El Paso, Fiset, McClendon & Shelley, of Austin, and Veale & Lumpkin and Lloyd Fletcher, all of Amarillo, for appellant. Davis & Davis, of Gainesville, and C. E. Gustavus, of Amarillo, for appellees.

HALL, J. This suit was originally filed in the district court of Sherman county on the 3d day of May, 1902, by appellant, whose name at that time was Florence L. Taylor, the wife of J. W. Taylor. Since the institution of the suit, she had been divorced from Taylor, and her former name of Florence L. Hines was restored to her. As originally instituted, the action was to recover seven sections of land situated near the town of Stratford, in Sherman county, from John Sparks. J. W. Taylor, her husband, who refused to join her in the action, was made a party de-

fendant. This is the fourth appeal, and the history of the transactions leading up to the litigation, together with the result of the several trials and appeals, may be learned by reference to the opinions upon the several appeals, reported as follows: Sparks v. Taylor, 87 S. W. 740; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Hines v. Sparks, 146 S. W. 289; Meador Bros. v. Hines, 165 S. W. 915. Because the history of the litigation and the facts are so fully and clearly set out in the reports referred to, we deem it unnecessary to again record these matters. No new facts have been alleged, nor has any additional evidence been brought out upon the last trial which tends to change the material issues as they were presented upon the former appeal. Suffice it to say that in Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, the Supreme Court held that Meador Bros. were entitled to protection as innocent purchasers of the land, to the extent to which they had paid purchase money before receiving notice of the equity of Mrs. Hines, and the judgment was reversed and remanded for the adjustment and final settlement of the equities between the parties. The court stated that the district court had ample power to adjust the equities between all parties according to the circumstances as they may appear upon another trial, and quoted from Durst v. Daugherty, 81 Tex. 650, 17 S. W. 388, the rules by which the equities between Mrs. Taylor and Meador Bros. must be adjusted, as follows:

"The pro tanto protection accorded an innocent purchaser is so well recognized by American courts that we deem it unnecessary to cite authority in support of the right. The difficulty lies in the application of the rule, and how the relief should be administered. Some of the courts adopt that rule that allows the innocent purchaser to retain of the land purchased the proportion paid for. Some admit a lien in favor of the innocent purchaser upon the land for the amount of the purchase money paid. Other courts give to the innocent purchaser all the land, with a right in the real owner to recover from him the purchase money unpaid at the time of notice. * * * In determining which of these rules should be applied in any case, it is necessary to ascertain the equities, if any, of the respective parties; for in the application of these rules the adjustment of the equities of each given case is the primary object to be accomplished. The rule that should be applied in one case may be inequitable if applied to another. Consequently, it is not proper that a court select one rule to the exclusion of the others as a rule that should govern alike in all cases. In ascertaining what the equities of the parties are, it is permissible to inquire into the price paid for the land by the innocent purchaser, and if, or not, he has placed upon the land permanent and valuable improvements, and if, or not, the land, situated as it is at the time, is in a condition to be partitioned or divided so that it would not affect or destroy its usefulness and render it of little or no value to either party, or if a partition could be had without injury to the innocent purchaser."

After quoting this discussion of the general rules from Durst v. Daugherty, the Supreme Court proceeds as follows:

"In order for Mrs. Taylor to recover against Sparks, she must establish her right in the land as against Taylor; also, that Sparks conspired with Taylor to defraud her out of her interest in the land, and that in order to accomplish that fraudulent purpose he received the deed from Taylor to himself, and made the deed to Meador Bros. If Mrs. Taylor shall establish her equity in the 30 sections of land as she claims, and if Taylor has sold, as appears to be undisputed, all of the land but the 7 sections in controversy, then Mrs. Taylor is entitled to be reimbursed by Taylor for her interest in the 30 sections, but could in no event recover of Sparks more than the value of the 7 sections conveyed to him."

It is clear from the quotations above that the Supreme Court did not intend that its conclusion—to the effect that Meador Bros., as innocent purchasers, were entitled to protection—should be limited in any way by the discussion of the general rules relating to the adjustment of equities, as quoted from Durst v. Daugherty, but definitely held that, under the facts of the case as then presented, Meador Bros. were entitled to protection pro tanto in the seven sections of which they were decreed to be the bona fide purchasers.

[1] In the report of this case in 165 S. W. 921, this court said:

"We think judgment should be rendered for Meador Bros. for the land in proportion to the purchase price paid by them for the land prior to April 26, 1902, which was the amount deposited in the Lowden National Bank, and to that extent they are bona fide purchasers of the land. The judgment of the lower court is therefore reversed, with direction that judgment be entered for Meador Bros. for the land to that extent, and under the direction of the Supreme Court in Sparks v. Taylor, 99 Tex. 411, 90 S. W. 491, 6 L. R. A. (N. S.) 381, the court may, if the equities require, establish a lien on the seven sections for Meador Bros. for the money paid by them, or may decree to them land in proportion to the amount paid, and that Mrs. Hines have judgment for land in proportion to the amount paid after April 26, 1902, which we find to be the amount to be paid Rudolph as commission, less the $100 earnest money."

It appears that this court adopted the holding of the Supreme Court in 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, and concluded that the particular rule declared in Durst v. Daugherty, permitting the innocent purchaser to retain of the land purchased by him the proportion paid for, was applicable to the facts of this case. A writ of error was refused by the Supreme Court. We therefore think the trial court properly refused to inquire into any facts from which any other rule might have been applied. Wells v. Littlefield, 62 Tex. 28. The case was reversed by the Supreme Court, and by this court, for the purpose of permitting the district court to inquire into all matters relating to the payment of purchase money upon which to base a pro rata distribution of the land; also of the payment of taxes and the collection of rents and revenues; to ascertain whether or not permanent and valuable improvements had been made upon the land, and, if so, to what extent, and to apportion the matter of court costs; and, upon ascertainment of these

facts, to settle and adjust upon an equitable basis taxes, rents, court costs, etc. We presume the Supreme Court reached the conclusion that Meador Bros. were entitled to recover seven-eighths of the land after full consideration of all the facts, and from these we think no other rule should have been applied. Plaintiff and Taylor were married June 29, 1900. They lived together a few weeks and separated in August, the plaintiff returning to her home in Toledo, Ohio. Within a few days after their separation, during the month of September, Taylor followed her to her home in Ohio, effected a reconciliation, and induced her to let him have $5,000, agreeing in consideration of that sum to take the title to all of the land in her name. Instead of complying with this agreement, he had the land conveyed to him, and although she had abandoned him, within a few weeks after their marriage, she trusted him with $5,000 and for more than a year made no effort to learn to whom the land had been conveyed and in whose name the title appeared upon the records. Permitting her property to stand in his name, by reason of which fact Taylor was enabled to convey it to Meador Bros. as bona fide purchasers, was, we think, a degree of carelessness which the Supreme Court no doubt considered a potent factor in applying the rule stated in the court's opinion.

[2] The maxim that, when one of two innocent parties must suffer, he who trusts most must suffer most, applies to this case. Appellant insists that by reason of evidence, which she sought to introduce, and from facts already proven in a former trial, the negligence of Meador Bros. does not entitle them to such consideration in a court of equity as would vest in them the title to seven-eighths of the land. As stated, we think this matter has been determined and all inquiry foreclosed by the above-mentioned finding of the Supreme Court, and of this court. Hanrick v. Hanrick, 81 S. W. 795. Reference to the record of this case on the former appeal discloses strong grounds for equitable relief in behalf of Meador Bros. For 14 years they have been forced to litigate with plaintiff in order to establish their rights, and this, of course, at great expense. During this period they have paid taxes amounting to more than $3,800, and in the meanwhile have been deprived of the absolute ownership of the land, receiving what may be termed a nominal sum in the way of rents. While being deprived of the use of their money, lands have greatly enhanced in value so that other lands of the same kind cannot now be purchased for several times the sum which they paid for the land in question. A judgment decreeing plaintiff all of the seven sections, now shown to be worth more than $8 per acre, and refunding to Meador Bros. their money only with 6 per cent. interest, would in our opinion, under all the circumstances, be grossly inequitable. If the controversy had been settled soon after it arose and before this and other lands of like kind and quality had increased materially in value, the court could have, in adjusting the equities, decreed that Meador Bros. take the seven sections, after paying the balance due under the contract; or that plaintiff have the land upon repayment to Meador Bros. of the sum paid by them, with interest; and, in either event, the judgment would have resulted in no injustice to either party, but now, when the land is more than four times more valuable than at the date of the purchase, it would not be just to either vest the title to the entire tract in Meador Bros. and require plaintiff to accept the balance due, or to give plaintiff the land and reimburse Meador Bros. in the amount paid with interest. The decree, as entered, gives the parties the benefit of this enhancement in value in proportion to the amount of land set apart to each, and we think is the only rule which could in equity and good conscience have been adopted, and is the one preferred by the courts. Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 356, 55 S. W. 119, 56 S. W. 330.

Appellant charges several times in her brief that Meador Bros. have been guilty of such negligence as would deprive them of their equitable rights. To this contention we do not assent. But for the act of appellant, in trusting the matter of the purchase of the 30 sections to her husband, Meador Bros. could not have been deceived into purchasing from him.

[3] It is contended by plaintiff that having set up the facts in her fourth amended petition, which she claims entitled her to have the title to the entire seven sections of land vested in her, subject to the lien in favor of Meador Bros. to secure them in the amount paid by them, with interest, and the defendant having failed to file even a general denial to such pleading, the facts alleged by her should have been considered as proved. The cases cited by appellant to sustain this contention are not in point. One of them was an injunction suit and reached the appellate court upon the plaintiff's petition alone, no general denial having been filed; in the other, the defendant filed special denials but no general denial. We think the question is settled by Vernon's Sayles' Civil Statutes, art. 1908, which provides that, where the defendant has pleaded the general denial, and the plaintiff shall afterward amend his pleadings, it will not be necessary for the defendant to plead such denial the second time; but such original denial shall be presumed to extend to all matters subsequently set up by the plaintiff. In prior pleadings, defendant has set up a general denial.

[4, 5] While it is true that this court takes judicial notice of the proceedings in this case, as shown by the record on the former appeal, and may take judicial notice of the

facts proven upon the former trial, neither this court nor the trial court is bound by the findings of the jury upon such former trial.

[6] In reply to interrogatories propounded by the court, the jury found that the value of the land at the time of the sale to Meador Bros. was $1.80 per acre. Appellant now insists that, if the land is to be partitioned between the plaintiff and defendant, then Meador Bros. should have only so much as the money paid by them will purchase at the rate of $1.80 per acre. This finding is supported by very unsatisfactory proof. One witness testified that there was very little patented land selling during 1901 and 1902, but that "most of what was offered for sale was selling around $2 per acre." Appellee introduced plaintiff's sworn pleading filed in November, 1902, in which it is alleged that the 7 sections of land in question were of the value of $1.50 per acre. It was further shown that several small tracts of the 30 sections purchased by Taylor had been sold, at about the same time, for less than $1.50 per acre. Under all circumstances, a sale of 7 sections in one body at $1.50 per acre seems to have been made at least for a fair price. No witness valued this land at $1.80 per acre, so this finding of the jury must be taken to be more of a guess than a finding of fact. We think, however, the finding is altogether immaterial. The price agreed upon and partially paid is the sum which should govern in adjusting the equities. We have found no case, and appellant has cited none, which holds that we should adopt a different value. Courts do not make contracts between parties, and, in the absence of sufficient ground for so doing, we are not authorized to set aside the contract price and substitute another; besides, we think it would be an unsafe doctrine to announce. If plaintiff could now limit the recovery by Meador Bros. to such amount of land as could be purchased at $1.80 per acre, upon proof that the land was worth 30 cents more per acre than the contract price, she could, for the same reason, even if the entire purchase price had been paid in cash, sue and recover of them the difference between the amount paid and such value as she could prove this land had when sold. This would result in destroying the protection which is thrown around a bona fide purchaser. Although Meador Bros. have paid one-eighth of the purchase price, they are entitled to full protection as bona fide purchasers to the extent of the sum paid at the time they were notified of plaintiff's equities. Bullock v. Sprowls, 54 S. W. 657; Bell County v. Fets, 120 S. W. 1065; Meyers v. Bloon et al., 20 Tex. Civ. App. 554, 50 S. W. 217; Fraim v. Frederick, 32 Tex. 297; 2 Pomeroy's Equity Jurisprudence (3d Ed.) § 750. To permit this rule to be modified by evidence of value other than is shown by the contract price must eventually result in abrogating or seriously impairing the rule. If the finding that the value of the land at the time of the sale was $1.80 per acre is an immaterial finding, the judgment was not rendered non obstante veredicto.

[7] Appellant complains that the commissions which her husband agreed to pay Rudolph were exorbitant and greatly in excess of the usual compensation to brokers. Through her negligence her husband, as the ostensible owner of the land, was authorized to contract with Rudolph for the payment of commissions in any sum, and the rights of Meador Bros. would in no way be jeopardized by such agreement.

After appellant learned that she was being defrauded by her husband, she acted with reasonable promptness and diligence; but her negligence in conferring upon her husband power to dispose of her lands at will weakens her claim in a court of equity.

[8, 9] Meador Bros. were not required to demand of appellant the amount of the purchase money they had paid out on the land. They were bona fide purchasers and could rest upon the rights incident to such status. Besides, the record shows the demand, if made, would have been refused, and the law does not require any one to do a useless thing. For this reason they were relieved of the duty of offering to pay appellant the balance of $917.23 purchase money.

[10] It was an immaterial inquiry whether appellant would have paid taxes if Meador Bros. had not. The record shows that she paid the taxes for the years 1902, 1903, and 1904, and that Meador Bros. have paid them ever since. In the adjustment of equities, she should be held to reimburse Meador Bros. for the amounts paid by them upon the lands decreed to her, together with interest upon such sums from the dates of their respective payment. The taxes being a lien upon the land, and no offer having been made by her to refund the several sums paid for her benefit, interest was properly awarded against her. She was divorced from Taylor October 12, 1905, and the decree entered in the divorce proceeding restored to her her former name. Since that date she had remained a feme sole.

[11] The matter of taxing costs is ordinarily one of discretion with the trial court and is not subject to review in this court unless that discretion has been abused. We think in this case the costs have been properly taxed. Dewees v. Nicholson, 182 S. W. 396; Harvard v. Carter-Kelley Lumber Co., 181 S. W. 756; Ft. Worth & Rio Grande Railway Co. v. Robertson, 138 S. W. 107.

[12] A stipulation signed by the parties with reference to certain facts was offered in evidence. The court excluded that portion of it which gave the history of the filing of the divorce suit by appellant against her husband, in El Paso county, March 1, 1902, and which detailed the facts relative to J. W. Taylor's

discharge in bankruptcy. These matters were not pertinent to the questions under consideration. A great deal of appellant's brief, presenting the assignments from the forty-second to the fifty-ninth, inclusive, complain of the action of the court in excluding oral and written· testimony which could have no bearing whatever except upon a trial on the merits. The main issues having been previously adjudicated, and the only questions for consideration being the adjustment of the equities between the parties, any evidence bearing upon the question of bona fide purchaser was immaterial and irrelevant, and the court did not err in excluding it. The matters which we have discussed are presented in many ways under various assignments, but we believe we have disposed of the material questions presented in the brief.

The judgment is therefore affirmed.

BOYCE, J., disqualified and not sitting.