HINES v. SPARKS et al.[†]

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1912. Rehearing Denied March 8, 1912.)

1. APPEAL AND ERROR (§ 564*)—STATEMENT OF FACTS—FILING—EXTENSION OF TIME.

Where the term of court at which a case was tried lasted more than 8 weeks as provided by law, and the statement of facts was not filed within the 60 days allowed by an order made by the trial court during the term, an order extending the time for filing the statement was void, when made thereafter by the judge in vacation.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2501–2506, 2555–2559; Dec. Dig. § 564.*]

2. APPEAL AND ERROR (§ 564*)—STATEMENT OF FACTS—EXTENSION OF TIME.

When it is apparent from an inspection of the record that the paper purporting to be a statement of facts is not legally filed, it will be disregarded, although there is no motion to strike and both parties acquiesce in considering it a statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2501–2506, 2555–2559; Dec. Dig. § 564.*]

3. COSTS (§ 255*)—PERSONS LIABLE—ILLEGAL PROCEEDINGS—STATEMENT OF FACTS.

An appellant, who was responsible for making and presenting a statement of facts not legally filed, was chargeable with the costs of the statement and all orders and motions in reference thereto.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 967; Dec. Dig. § 255.*]

4. TRUSTS (§ 81*)—RESULTING TRUST—HUSBAND AND WIFE.

Where a contract was made between a husband and wife, whereby he was to complete the purchase of certain land with her money and take title in her name, his only interest to be a share in the profits when the land should be again sold, and where she gave him the money to be used to complete the purchase, but he took title in his own name, she immediately became vested with an equitable title to all the lands, though the entire purchase price was not then paid and the unpaid part was subsequently paid by the husband from the proceeds of sales of parcels of the land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 115–118; Dec. Dig. § 81.*]

5. DIVORCE (§ 275*) — CONVEYANCES IN FRAUD OF RIGHTS OF WIFE.

Under Rev. St. 1895, art. 2983, providing that any conveyance of community property or any alienation of property made by a husband on or after the date on which action is brought

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

146 S.W.—19     † Application for writ of error dismissed by Supreme Court.

against him for divorce shall be null and void if made with a fraudulent view of injuring the rights of the wife, a deed was void which was executed by a husband after action brought by his wife for divorce, and which was fraudulently dated back and entered of record as of the day that the divorce action was brought.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*]

6. DIVORCE (§ 275*) — CONVEYANCES IN FRAUD OF RIGHTS OF WIFE.

For a conveyance to be void under such statute, the property conveyed need not be community property, but may be separate property of the husband or property which he holds in trust for his wife.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*]

7. DIVORCE (§ 275*)—WORDS AND PHRASES—"COMMUNITY PROPERTY."

"Community property," within the meaning of such statute, includes the interest remaining in property purchased by a husband in his own name mainly with his wife's money subsequent to their marriage, after allowing his wife an interest proportionate with the part of the purchase price paid by her.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*

For other definitions, see Words and Phrases, vol. 2, pp. 1343, 1344; vol. 8, p. 7608.]

8. DIVORCE (§ 275*) — CONVEYANCES IN FRAUD OF RIGHTS OF WIFE—SERVICE OF PROCESS.

Under this statute previous service of process upon the husband is not essential to make void a conveyance made by him on or after the day the suit for divorce is brought.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*]

9. DIVORCE (§ 275*) — CONVEYANCES IN FRAUD OF RIGHTS OF WIFE—DISMISSAL OF ACTION—EFFECT.

A conveyance made in violation of this statute was void regardless of the fact that the divorce action was subsequently dismissed.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*]

10. DIVORCE (§ 276*) — CONVEYANCES IN FRAUD OF RIGHTS OF WIFE—REMEDIES OF PURCHASERS.

The purchasers of property sold by a husband in violation of this statute were entitled, in the wife's action against them, to protection by a lien or partition to the extent of the taxes paid by them and of the husband's separate interest in the proceeds of the sale of the land.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 749–753; Dec. Dig. § 276.*]

11. APPEAL AND ERROR (§ 544*)—STATEMENT OF FACTS—NECESSITY.

In the absence of a statement of facts, exceptions to rulings on the pleadings, evidence, or instructions will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2426, 2478, 2479; Dec. Dig. § 544.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Florence L. (Taylor) Hines against John Sparks and others. From a judgment for plaintiff in part and for defendants in part, plaintiff appeals. Reversed and remanded.

See, also, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381.

M. W. Stanton, Cooper, Merrill & Lumpkin, and Fiset & McClendon, for appellant. Gustavus, Bowman & Jackson, and W. O. Davis, for appellees.

PRESLER, J. The pleadings in this case are voluminous, covering some 50 pages of the transcript, and the issues made thereby, so far as the consideration of the same are necessary to the determination of this appeal, and can be condensed within reasonable limits, will appear in the following statement of the case: Appellant instituted this suit in the district court of Sherman county, against appellees James W. Taylor and John Sparks, to recover certain sections of land in said county which appellant claimed as her separate property. The suit was instituted on the 3d day of May, 1902, by appellant, who was then the wife of said Taylor and suing under the name of Taylor, as sole plaintiff, and J. W. Taylor and John Sparks as sole defendants. Thereafter these appellees, T. S. and S. D. Meador, who compose the firm of Meador Bros., were also made parties defendant. There was a jury trial in Sherman county in 1904, which resulted in a verdict and judgment in favor of plaintiff for title and possession of all the land in controversy and a judgment over in favor of defendants Meador Bros. against defendants Taylor and Sparks upon their warranties. From this judgment an appeal was taken to the Second Court of Civil Appeals, and the cause was subsequently transferred to the Court of Civil Appeals at San Antonio, which court affirmed the judgment of the trial court. From this judgment a writ of error was sued out to the Supreme Court, and that court reversed and remanded the cause to the district court for a new trial. After the mandate of the Supreme Court was filed in the district court of Sherman county, the cause was transferred by agreement of all parties to the district court of Potter county. Later in 1908 John Sparks, who was a resident of the state of Nevada, died, and his will was probated in Williamson county, Tex., where he owned real estate. By the terms of this will Nancy Elmira Sparks and Benton H. Sparks were named as the independent executors thereof, without bond, and they were duly appointed as such executors by the county court of Williamson county, and qualified as such and were thereafter made parties to this suit by scire facias proceedings and were properly served to answer but did not put in appearance.

The plaintiff's petition contains three counts. The first is in the statutory form of an action in trespass to try title, and the third is an action for money had and received. The second count, which sets out plaintiff's cause of action in detail, alleges, in substance, the following: That on June

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

16, 1900, Josephine and Josiah F. Crosby were the owners of 30 sections of land in Sherman county, including the 7 sections in controversy. That on or about said date said Crosbys and J. W. Taylor entered into a contract, whereby the latter in consideration of $1,000 paid, secured an option upon said lands for 60 days, under the terms of which he had the option during the period named to purchase said lands for $9,600; the $1,000 to be credited as part of the said purchase price if the option were taken up, but otherwise he was to lose the $1,000. That on June 29, 1900, plaintiff and said Taylor were married at Morenci, Mich., plaintiff being then a resident of Toledo, Ohio, but shortly moved to El Paso, Tex., where she and said Taylor lived until some time in August, 1900. That in September, 1900, Taylor came to Toledo and procured from plaintiff $5,000, under circumstances hereinafter detailed for the purpose of taking up said option, which he in fact took up, and deed was executed to him by the Crosbys about November 20, 1900. That Taylor then proceeded to sell off said lands, and sold off all except the seven sections in suit. That on or about March 1, 1902, plaintiff sued Taylor for divorce in the district court of El Paso county, Tex., in which suit an injunction was issued against Taylor and others restraining the sale or other disposition of plaintiff's property; Taylor being served with citation and said injunction on March 3, 1902. That this cause was called for trial October 8, 1903, and plaintiff being ill and unable to attend court, and being unable to procure a continuance, was permitted to take a nonsuit without prejudice. That said suit was refiled in said court of April 9, 1904, and final judgment for divorce rendered in favor of plaintiff against said Taylor on October 12, 1905. That about February 15, 1902, one C. F. Rudolph, who was county clerk of Sherman county, purporting to act as the agent of said Taylor, made a contract with Meador Bros., whereby Taylor agreed to convey to Meador Bros. said seven sections for the sum of $7,676.50, less $49.14, to pay taxes and $22 expense of surveying, the sum of $100 being paid at the time as earnest money to be credited on the purchase price, the balance to be paid when a satisfactory abstract was furnished and upon execution by said Taylor of a deed with general warranty, $5,659.27 thereof to be remitted to the Lowden National Bank at El Paso, and $968.09 to be remitted to Rudolph. That thereafter Taylor caused to be prepared a deed to defendant Sparks, which purported to be dated, acknowledged before said Rudolph, and filed in Sherman county on March 1, 1902, purporting to convey said seven sections to Sparks for a recited cash consideration of $6,008.85. That about March 10, 1902, Meador Bros. procured a draft for the sum of $5,659.27 at St. Jo, Tex., and forwarded same, together with

a blank deed to be executed by Taylor to them, conveying said lands, reciting a cash consideration of $6,227.36. These they accompanied by a letter directing the bank to deliver the draft to Taylor upon his executing the deed, and to send deed to Meador Bros. at St. Jo, Tex. This letter was signed by C. F. Rudolph, as agent for J. W. Taylor, and by Meador Bros., was dated Stratford, Tex., February 25, 1902, and had been prepared by Rudolph and forwarded by him to Meador Bros. at St. Jo, accompanied by an abstract to the land, made and certified to by himself. That this draft was forwarded for collection by said bank on March 13, 1902, and the proceeds held by the bank as the agents of Meador Bros. until May 10, 1902, when, in violation of its agency, it transmitted the proceeds to John Sparks. That Sparks about April 18, 1902, executed a deed whereby, for the expressed consideration of $6,008.85, he conveyed the lands to Meador Bros. and forwarded said deed and the deed from Taylor to himself to said bank with a letter instructing the latter to deliver same to Meador Bros. upon payment by them of the sum of $6,000. That the bank held said deeds from the date of their receipt in April, 1902, as the agent of Sparks, until long after the filing of this suit on May 3, 1902. That when plaintiff married said Taylor she had as her separate property a large amount of real estate in Toledo, Ohio, and that the $5,000 loaned by her to Taylor was raised and loaned under the following circumstances: Plaintiff raised the money by mortgage upon her separate property in Toledo under an agreement with Taylor that he was to use $1,000 to repay himself for what he had paid for said option and the balance in paying for said property; the remaining portion of the purchase money to be paid for out of sales of the land, and the title to be taken in the name of plaintiff, and the land to be her separate property. And when the land was sold Taylor was to share equally in the net profits. That Taylor merely signed the notes and mortgage to bind his inchoate right of dower under the Ohio laws. That this transaction was valid under the laws of Ohio, as well as under the laws of Texas, and the proceeds of said loan were her separate property under the laws of each of said states. That Taylor procured the money under promise to carry out this arrangement, and plaintiff relied upon said promise. That Taylor, without the knowledge or consent of plaintiff, fraudulently took the title in his own name and began to dispose of the lands in fraud of plaintiff's rights and had disposed of all but the seven sections in suit. That Taylor used the money of plaintiff in the purchase of these lands, but that if he did not do so he was estopped by his fraudulent misappropriation thereof to deny that he so used it, and that the balance of the purchase money he paid out of

the proceeds of the sale of the lands. That plaintiff was a bona fide resident of Ohio at the time this arrangement was made, under whose laws the husband and wife may contract with each other, and the husband had no interest in or control over the lands and property of the wife, except, in case of her death, an endowment for life in one-third of all her real estate.

It is alleged: That this agreement and the said $5,000 were procured by said Taylor from plaintiff by fraud, in that he never intended to take title in her name, or to carry out the agreement, but intended to defraud her out of her money and out of said lands. That said Taylor, Sparks, Rudolph, Bank, Meador Bros., and divers other persons conspired together to defraud her out of said seven remaining sections, and that all the acts of said parties above set out were done in furtherance of said fraudulent conspiracy. That said deed was antedated, and the acknowledgment and record thereof antedated, in that same was not in fact signed, acknowledged, or recorded until March 3, 1902, after said divorce suit was filed and Taylor served with citation and with said injunction. That Sparks did not know of its execution until long after it was executed and put on record. That Sparks paid no consideration whatever for the land; but, if there was any consideration at all, it was a pre-existing debt that had long since been barred by limitation and discharged in bankruptcy. That Meador Bros. had full notice and knowledge of plaintiff's claim before they parted with the purchase money therefor, and were not purchasers in good faith, but bought at a price far below the real value of the land. That the proceeds of said draft were under their control until May 10, 1902. That they learned of said deed from Sparks to them on April 26, 1902, and took no steps to have said money returned to them or held by the bank, but entered into an agreement to leave said money there pending the disposition of this suit. That when they learned of Sparks' deed to them they refused to accept it, and did not accept it until long after this suit was filed. That they had actual knowledge of the filing of this suit before said money had passed beyond their control, but they took no steps to stop the payment thereof to Sparks. That long after this suit was filed, and with full knowledge of plaintiff's claim and said fraudulent conspiracy, they entered into an agreement with said Rudolph and the other defendants to deprive plaintiff of her lands. It is further alleged that said bank was served with a copy of said injunction on March 3, 1902, and they had actual knowledge and notice of plaintiff's claim at the time they received Meador Bros.' money on or about March 13, 1902. It is further alleged: That the lands are unimproved wild lands; that no improvements have ever been made thereon. That, if Meador Bros. have any equity therein,

it is only such equity as could arise by notice of their having paid a part of the purchase money. That $968 of said purchase money has never been paid, unless it was paid long after the filing of this suit and with full knowledge and notice of plaintiff's claim. That prayer in this court is for title and possession of the lands, the cancellation of the deeds from Taylor to Sparks and Sparks to Meador Bros., and in the alternative for an adjustment of the equities between the parties, and in this connection plaintiff offers to do equity by paying to Meador Bros. any sum which the court may hold she ought to pay.

Defendants, these appellees, T. S. and S. D. Meador, answered by general denial and plea of not guilty, and specially pleaded, among other things, title in themselves to the land in controversy, claiming to own the same as bona fide purchasers for value, without notice of the claim of appellant, setting out the details of their purchase of the land and claiming to own and hold the same from and under appellant's husband, J. W. Taylor, and that said Taylor at the time appellees acquired their interest in the land appeared of record to be the legal owner of the same with a regular chain of title, duly registered from the state to himself, and was clothed with full power and authority to sell the same, and that if appellant ever had any interest in said land the evidence of her right rested in parol and was not of record, and that appellees had no notice thereof until after they had bought said land and parted with the purchase money therefor, and also sought to recover rent against appellant for the use and possession of said land, and by plea in reconvention against their codefendant John Sparks sought to recover judgment over against his estate upon his warranty in the event appellant recovered the land; and further answered specially in reply to the allegations of plaintiff's petition: (1) That, if appellant instituted a suit for divorce and secured an injunction therein as claimed by her, said suit was never prosecuted to final judgment, but was dismissed, and that no citation was served in said suit until long after J. W. Taylor had conveyed the land in controversy to John Sparks; (2) that if plaintiff on the 3d day of May, 1902, brought suit against J. W. Taylor and John Sparks to recover the land in controversy, no citation was served in said suit until long after John Sparks had executed the deed to appellees and after appellees had fully paid for the land in controversy; (3) that appellees had not had the use of the $968.09 of the purchase money for the lands in controversy claimed by Rudolph as his commission, but that under agreement with Rudolph the same was deposited in the First National Bank of St. Jo, Tex., to remain during the pendency of this suit and to be paid said Rudolph in the event that it should be adjudg-

ed that appellees had a good and perfect title to the lands in controversy, otherwise to be returned to appellees, and that said money has ever since been and now is in the said bank; (4) that since the 1st day of January, 1903, the appellant has had exclusive use and possession of the land in controversy and has unlawfully appropriated to her exclusive use the fruits and revenues thereof, amounting to the sum of $50 annually per section and asks that should appellant recover anything of appellees because of the unpaid purchase money amounting to $968.09, then that the value of the use of said lands be offset against said claim.

A trial was had in the district court of Potter county, before a jury, who returned a verdict upon special issues submitted to them by the court. Thereupon appellant filed a motion requesting the court to enter judgment upon the findings of the jury, awarding her the title and possession of the land in controversy, and at the same time she filed her motion, praying that, in case the court should not grant her motion to enter judgment in her favor, a new trial be granted. Both of which motions the court overruled and thereupon rendered judgment in favor of plaintiff for one section of the land, and in favor of appellees Meador Bros. for the remaining six sections, and in favor of appellant and against J. W. Taylor and the estate of John Sparks for the sum of $8,667.70, holding in effect, as appears upon the recitals of the judgment, that appellant was entitled to an interest in the land in the proportion that $917.23 (the unpaid purchase money) bears to $5,759.27, and the one section partitioned to appellant appears from the recitals of the judgment to have been so partitioned upon the agreement of the parties to that effect, without prejudice, however, or admission on the part of appellant to the effect that the court had properly construed the law as applied to the verdict of the jury and admitting in her behalf only that if her rights were as found by the court, to wit, one-seventh interest, then that the partition was fairly made. Appellant duly excepted to the various rulings and judgments of the court and gave notice of appeal, and the cause is now properly before this court for revision, upon the errors assigned.

[1, 2] It appears from an inspection of the transcript and of a document purporting to be a statement of facts, filed in this cause, that the term of the court of Potter county, Tex., at which this cause was tried, lasted for more than 8 weeks (as provided by law), and that the statement of facts was not filed within the 60 days allowed by the order made by the trial court during the term, and that the order made thereafter, extending the time for an additional 30 days, was not made in term time or by the court, but by the judge in vacation, and appellees suggest that said order is unauthorized by law and void.

On October 13, 1911, in the case of Smyer v. Ft. Worth & Denver City Railway Co., 143 S. W. 683, this court, in a written opinion, not yet officially published, following what we then understood our Supreme Court to have held in the cases of Couturie v. Crespi, 103 Tex. 554, 131 S. W. 403, and Hamill v. Samuels, 133 S. W. 419, held that an order granting additional time to file statement of facts granted not in term time of the court in which the case was tried, said term being by law authorized to continue more than eight weeks, was void, and upon motion for rehearing being informed that the question involved was then pending on certification before our Supreme Court, in the case of P. & N. T. Ry. Co. v. Cox, 140 S. W. 1078, and in view of the evident conflict of opinion on said question between the various Courts of Civil Appeals, we postponed the final determination of said motion, together with that of the present and other cases presenting the same question. Our Supreme Court having, however, recently, in answer to the question certified in the Cox Case, supra, affirmed the conclusion reached by this court in the case referred to, and this court having in a written opinion in the case of National Bank of Commerce v. Lone Star Milling Co., 148 S. W. ——,[1] not yet officially published, and of date January 19, 1912, reannounced the conclusion reached in the Smyer Case, supra, to the effect that such order so had (in vacation) was void, we are unable under the law, as above stated, to consider the document filed in this case purporting to be a statement of facts, and in reaching this conclusion we have considered the objection raised by appellant that appellees' motion (or suggestion) filed herein on the 2d day of October, 1911, raising said question, came too late, and would so hold were the question one that we consider necessary to be raised by motion duly filed; but in view of the many decisions in this state to the effect that, when it is apparent from an inspection of the record that the paper purporting to be a statement of facts is not legal and legally filed, this court will disregard the same, even when there is no motion to strike out, and both parties appear to acquiesce in considering such paper as a statement of facts. Raleigh & Heidenheimer Bros. & Clarke v. Cook, 60 Tex. 440; Hollywood v. Wellhausen, 28 Tex. Civ. App. 541, 68 S. W. 329; Lanier v. Perryman, 59 Tex. 107; Armstrong v. Bean, 59 Tex. 492; Foltz v. Ferguson, 24 S. W. 657; S. A. & A. P. Ry. Co. v. Moore, 75 Tex. 643, 13 S. W. 295; White v. Parks, 67 Tex. 605, 4 S. W. 245.

[3] In view of the conclusion above set out as to the statement of facts in this case, it becomes unnecessary to pass upon the merits of appellees' motion to strike out the statement of facts filed herein on August 11, 1911, on account of the numerous alleged violations of the rules in the preparation of said statement. We are, however, of the

[1] Rehearing pending.

opinion that as appellant is responsible for having made out and presented in this court said purported statement of facts, which can serve no useful purpose herein, the cost of said statement and all orders and motions with reference thereto should be taxed against her, and it is, accordingly, so ordered.

The special issues submitted by the court in this case and the answers of the jury thereto upon which the court rendered the judgment complained of are as follows:

"First special issue: The undisputed evidence shows: That on the 10th day of July, 1876, the 7 sections of land in controversy were patented by the state of Texas to J. F. Crosby as assignee of the Texas & New Orleans Railway Company, and that thereafter on the 16th day of June, 1900, while said J. F. Crosby and Josephine Crosby were still the owners of said lands, they entered into a written contract with the defendant J. W. Taylor, by which they agreed to sell and convey said lands, together with 23 other sections in Sherman county, Tex., for the sum of 50 cents per acre, or $9,600 in the aggregate, said Taylor paying at that time in cash the sum of $1,000, the balance to be paid within 60 days thereafter, but the time was afterwards extended by mutual agreement. That Taylor fully paid said balance of price for said 30 sections of land prior to November 20, 1900, when a deed was executed by said Crosby and wife to said Taylor, in the usual form, conveying said 30 sections to said Taylor, and in which deed full payment by said Taylor was acknowledged. That James W. Taylor and plaintiff were legally married on June 28, 1900. That on September 15, 1900, said Taylor and plaintiff executed a mortgage upon plaintiff's separate real estate situated in Toledo, Ohio, and they also executed two notes, secured by said mortgage, one for the sum of $1,500 and the other for the sum of $3,500, and realized the sum of $5,000 therefrom, and the same was turned over to said James W. Taylor. Before the contract of sale of the 7 sections, in controversy, to defendants Meador Bros., Taylor sold of the 30 sections purchased of Crosby and wife the following, to wit: Eleven sections conveyed by Taylor and wife (the plaintiff) to J. V. Vickers et al. on January 9, 1901, for the purported consideration of $7,260 cash; one section conveyed by said Taylor and wife to D. J. Wilson on October 29, 1901, for the purported consideration of $960, $300 being cash and the remainder on credit; two sections conveyed by said J. W. Taylor to E. E. Law, January 29, 1902, for the purported consideration of $1,920, $640 being in cash and the remainder on credit; two sections conveyed by said Taylor and wife to H. A. Knight on January 24, 1902, for the purported consideration of $900 cash; one-fourth of a section conveyed by said Taylor to Chas. Austin on November 11, 1901, for the purported consideration of $240, $80 being in cash and the balance upon credit; one-fourth of a section conveyed by said Taylor to W. J. Austin, November 11, 1901, for the purported consideration of $240, $80 being in cash and the balance on credit; two sections conveyed by said Taylor to John Dees January 24, 1902, for the purported consideration of $1,920, of which $640 was cash and the balance on credit; two and one-half sections conveyed by Taylor and wife to H. A. Knight, October 9, 1901, for the purported consideration of $2,400 cash. On February 21, 1901, said J. W. Taylor donated and conveyed to the Chicago, Rock Island Railroad Company 29 acres out of surveys 165 and 143, for right of way purposes. The proof, however, does not show the amount of expenses incident to making the above sales or what taxes, if any, were paid by J. W. Taylor, or what proportion of the credit sales have been collected. The proceeds of the above sales are shown to have been converted by defendant Taylor to his own use. On the 15th day of February, 1902, said J. W. Taylor, through his duly authorized agent, C. F. Rudolph, entered into a written contract with the defendants T. S. and S. D. Meador, partners under the name of Meador Bros., by which he agreed to execute to said Meador Bros. a deed, with the usual covenants of warranty, conveying to them a good and perfect title to said 7 sections of land in controversy, for the price of $1.50 per acre, less 29 acres, being deducted on account of the right of way conveyed to the Chicago, Rock Island Railroad Company over two of said sections, $100 of said purchase money being paid in cash upon the execution of the contract, said Taylor to furnish an abstract showing a good and perfect title free from defects, to be approved by an attorney, selected by Meador Bros., and upon said abstract being furnished and approved said Meador Bros. bound themselves to send to the Lowden National Bank of El Paso, Tex., the sum of $5,659.27 in exchange, to be paid to the said Taylor upon his depositing in said bank a deed to said Meador Bros. in compliance with said contract, said sum being the amount of the unpaid purchase money going to the said Taylor, the remainder of said purchase money, less the sum of $49.14, taxes upon said land, assumed by the said Meador Bros., and less $22, expenses of surveying, and the sum of $917.23, to be paid to the said Rudolph as commission due him from said Taylor upon said sale.

"On February 22, 1902, said Rudolph, having completed the abstract of title to said seven sections, sent it to Meador Bros. at St. Jo, Tex., together with a prepared deed to said Meador Bros. to be signed by said Taylor for the approval of said Meador Bros. and their attorney, and with said deed and abstract inclosed the following letter: 'Stratford, Tex., February 25, 1902. Lowden National Bank, El Paso, Tex.—Gentlemen: Inclosed is a warranty deed to be executed by J. W.

Taylor, conveying seven sections of land in Sherman county to T. S. and S. D. Meador. Also inclosed is bank draft $5,659.27 in your favor, which you are to transfer to the account or order of the said J. W. Taylor on his execution of this deed. The deed you will then transmit at once either to Meador Bros., St. Jo, Tex., or to me at Stratford, Tex., for record, as the said Meador Bros. may indicate below on this page as being their wish. The deed is properly drawn by previous agreement of all parties to make the consideration read one dollar and fifty cents per acre. Very respectfully, C. F. Rudolph, Agt. for J. W. Taylor.' This letter was shown to be in the handwriting of said Rudolph. Meador Bros. had the abstract of title examined by an attorney of their selection, who approved the same, and on or shortly before the 10th day of March, 1902, procured exchange from a bank at St. Jo, Tex., upon the Seaboard National Bank of New York, payable to the order of said Lowden National Bank, and placed said draft, the above letter, and deed in an envelope and mailed it to said Lowden National Bank, but before doing so wrote the following at the foot of said letter: 'Send deed to Meador Bros., St. Jo, Tex., Meador Bros.' Said letter, draft, and deed reached the Lowden National Bank on or shortly before the 13th day of March, 1902, whereupon the bank forwarded the draft to New York for collection, and had its proceeds placed to its credit in the Seaboard National Bank, and Meador Bros. never at any time appeared upon the books of said Lowden National Bank. On the ——— day of March, 1902, said J. W. Taylor at Stratford, Tex., for the purported consideration of $6,008.85, executed a deed conveying said seven sections of land to John Sparks, which deed was acknowledged and recorded in Sherman county on the ——— day of March, 1902. The consideration of said deed was in fact a settlement of an antecedent debt due from said Taylor to said Sparks. On the 18th day of April, 1902, said Sparks, at the request of said Taylor, executed and acknowledged for a recited cash consideration of $6,008.85 a deed conveying said seven sections of land to said T. S. and S. D. Meador, and on the 19th day of April, 1902, mailed said deed, together with the deed from Taylor to himself, to said Lowden National Bank, and with said deeds inclosed in a letter directing the bank to deliver deeds to Meador Bros. when the amount named as consideration of the deed ($6,008.85) was placed to his credit in said bank. The deeds and letter reached the Lowden National Bank on or shortly before April 26, 1902. These deeds, as well as the deed from Crosby and wife to Taylor, were in the usual form and contained the usual covenants of warranty. Taylor and Rudolph had also shortly before this instructed said Lowden National Bank upon the receipt of the deeds to place the said money to the credit of John Sparks. On May 9, 1902, said Sparks wired said bank to send him by mail New York exchange for $6,000, which instruction the bank complied with on the 10th of May, 1902, to the extent of mailing him New York exchange for $5,651.57 of the amount previously deposited to be paid to J. W. Taylor on the sale to Meador Bros. The seven sections of land in controversy are unimproved prairie land, and since the conveyance of the same by J. W. Taylor to John Sparks, the plaintiff has paid taxes thereon amounting in the aggregate to $204.22, and Meador Bros. have paid taxes thereon amounting in the aggregate to $1,515.71. During the spring of 1903, by mutual agreement between C. F. Rudolph and Meador Bros., the Meador Bros. deposited the sum of $917.23, the amount of the commission due said Rudolph on said sale to Meador Bros., in the First National Bank of St. Jo, Tex., to be held there during the pendency of this suit and has not been otherwise paid. You will say in your answer to the above 'first special issue' that you find the facts therein stated to be true. Answer to first special issue: 'The facts therein stated are true.'

"Second special issue: Did the plaintiff and defendant J. W. Taylor enter into an agreement on or about the 15th day of September, 1900, to the effect that plaintiff should raise the sum of $5,000 by mortgage upon her separate property in Toledo, Ohio, and that such money should be used by defendant Taylor in payment of his contract with J. F. Crosby for the purchase of the 30 sections of land in Sherman county, Tex., and was the title to be taken by Taylor in plaintiff's name? Let your answer be 'yes' or 'no.' Answer to second special issue: 'Yes.'

"Third special issue: How much, if any, of the $5,000 realized by the mortgage of plaintiff's separate estate in Toledo, Ohio, was applied by J. W. Taylor to the payment for the lands purchased of J. F. Crosby and wife? Answer to third special issue: '$5,000.'

"Fourth special issue: The first suit by plaintiff against defendant Taylor, for divorce, was filed in the district court of El Paso county, Tex., on the 1st day of March, 1902. Now, was the deed from J. W. Taylor to John Sparks, conveying the seven sections of land in controversy, executed and filed for record in Sherman county before or after said suit was filed? Answer to fourth special issue: 'After.'

"Fifth special issue: Did the defendants T. S. Meador and S. D. Meador, or either of them, on or prior to April 26, 1902, know that any money belonging to plaintiff in her separate right had been used in paying for the 30 sections of land purchased of J. F. Crosby and wife, or that the plaintiff claimed any interest in said lands? Answer to the fifth special issue: 'No.'

"Sixth special issue: Did T. S. Meador and S. D. Meador, or either of them, on or prior to the 10th day of May, 1902, have actual notice of the claim, if any, of the plaintiff's claim to the seven sections of land in controversy? Answer to sixth special issue: 'Yes.'

"Seventh special issue: If in answer to the second special issue you have answered to the effect that there was a contract between the plaintiff and the defendant Taylor whereby she was to become interested in or owner of the said 30 sections of land contracted for. from the Crosbys, then answer this further question: By the terms of said contract was it agreed that plaintiff was to be the owner of the land and that Taylor was to have only an undivided one-half interest in the profits, if any, to be derived from the sale of the lands, after paying the $5,000 loan secured in Toledo, Ohio, on the 15th day of September, 1900, and after paying the expenses of making the resale? Answer to seventh special issue: 'Yes.'

"Eighth special issue: The undisputed facts further show: That on March 1, 1902, the plaintiff filed in the district court of El Paso county, Tex., a suit for divorce against her husband, J. W. Taylor, and for an adjudication of their property rights, including the rights claimed by them in and to the land in controversy; but no injunction was granted or issued in said cause restraining said Taylor from handling and disposing of the lands mentioned in the deed from Crosby and wife to J. W. Taylor or the proceeds of such lands until March 3, 1902, and no citation in said suit was served upon Taylor until the 4th day of March, 1902. That said divorce suit was voluntarily dismissed by plaintiff on the 8th day of October, 1903; the judgment reciting that the dismissal was without prejudice. That afterwards, on the 9th day of April, 1904, the plaintiff filed a new suit for divorce, in said court, against said J. W. Taylor, the petition being in substance the same as the first petition, upon which new suit a divorce was granted plaintiff on the 12th day of October, 1905. The judgment therein, among other things, recited that no demand was made for the adjudication of the property rights of the parties, and was waived without prejudice to the rights of the parties in any suit then pending or thereafter to be brought. The evidence does not explain the cause of delay in bringing said new suit for divorce. You will say in your verdict that you find the facts in this special issue to be true. Answer to eighth special issue: 'The facts therein stated are true.'

"Ninth special issue: Was the deed from J. W. Taylor to John Sparks correctly dated, and were the dates of acknowledgment, filing for record, and recording of said deed in Sherman county correctly given? If you say 'No,' then state the proper dates, as shown by the testimony when the same were executed, acknowledged, filed for record, and recorded in said county. In this connection you are instructed that said deed appears upon its face to have been executed and acknowledged by the grantor on March 1, 1902, and it appears upon the deed records of Sherman county to have been filed in the office of the county clerk of said county for record at 9:30 a. m. on March 1, 1902, and recorded on the same day. Now, the above dates are presumed by the law to be the true and real dates of said transactions, and the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the above are not true dates of such transactions, and, unless you find that she has done so, it will be your duty to find that said deed was executed, acknowledged, and recorded on March 1, 1902. Answer to ninth special issue: 'No. March 3, 1902.'"

[4] Appellant, by her first assignment of error, complains of the action of the court in refusing to render judgment for her upon the findings of the jury for the entire 7 sections of land in controversy, and contends that under the second, third and seventh special issues, as found by the jury, appellant became invested, at the time the Crosbys deeded to Taylor, with the entire equitable title to the 30 sections of land, including the 7 sections in controversy. We are of the opinion that this contention is sound and should be sustained. As shown by the issues, as found by the jury, there can be no question as to the contract made between appellant and her husband, J. W. Taylor, at the time she furnished him with the $5,000 of her separate money to be used in payment on his contract with J. F. Crosby for the purchase of the 30 sections of land (including the 7 sections in controversy), and that by the terms of said contract it was agreed that appellant was to be the owner of the lands and that the title was to be taken by Taylor in her name and that Taylor was to have only an undivided one-half interest in the profits, if any, to be derived from the sales of the land, after paying the $5,000 loan secured in Toledo, Ohio, on the 15th day of September, 1900, and after paying the expenses of making the resale. We believe, under the well-established principles of law governing the creation of trusts, the agreement above referred to placed the equitable title to the entire 30 sections of land in the appellant. As stated by the Supreme Court on the former appeal in this case (99 Tex. 424, 90 S. W. 489, 6 L. R. A. [N. S.] 381): "A husband may enter into contract with his wife concerning their property rights. He may purchase land from her and may sell land to her; he may borrow money from her and he may pay the debt just as he would to any other creditor; he may become her trustee or agent for the investment of funds which belong to her the same as he may assume those relations to any other person; in fact, his power to contract with

her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyance. A married woman may, when joined by her husband, sell or mortgage her separate property; she may with her separate funds buy real or personal property from her husband or another, which will be her separate estate. She may borrow money and by mortgage bind her separate estate for its payment, or she may make her separate property surety for her husband's debt or for the debt of a third person with her husband's concurrence. Thus it will be seen that the power of the husband and wife to contract with reference to their property rights is ample to sustain this transaction, and we can see no legal obstacle to the making of such contract in Texas." It is contended, however, by appellee, that appellant, as adjudged by the Supreme Court on the former appeal, could have no greater interest in the land than an undivided equitable interest to the extent that her means was used in paying for the land. We are unable to determine, however, from the record before us, and the opinion of the Supreme Court referred to, that the contract or agreement under which Mrs. Taylor's rights in the land arise, as shown by the evidence then before the court and the findings of the jury here considered by us, were the same. It is evident from the opinion referred to that the Supreme Court did not pass upon or consider that part of the contract or agreement between appellant and J. W. Taylor here presented to us by the findings of the jury, to the effect that the entire property was to be the separate property of Mrs. Taylor and that Taylor was only to have an undivided one-half interest in the profits, after the sales were made, and after paying the $5,000 loan, secured in Toledo, Ohio, on the 15th day of September, 1900, and after paying the expenses of making the resale. We think, however, the opinion of the Supreme Court clearly announced the proposition that the agreement between Taylor and his wife (this appellant) must be given the same effect as if said agreement were made between other individuals, and while we think the facts, as found by the jury under the special issues submitted, tend strongly to show that the balance of the purchase money was paid by Taylor from proceeds realized from sales of these lands, the property of appellant, and that she thus furnished the whole of the purchase money for the same, we do not regard this latter inquiry as material on this phase of the case, to wit, as to the extent of appellant's interest in the land under her contract with J. W. Taylor, but are of the opinion that this question is to be determined by the construction of the contract itself, which in express terms, as found by the jury, provided that she was to be the owner of the entire 30 sections; that the title was to be taken in

her name; and that Taylor was only to have an undivided one-half interest in the profits, if any, to be derived from the sale of the land, after paying the $5,000 loan referred to and after paying the expenses of making the resale. It further appears from the findings of the jury that Taylor, in violation of his contract with appellant, had taken title to the 30 sections of land in his own name, had sold 23 sections of the same, and had converted the proceeds of said sales to his own use. We therefore conclude under our construction of the contract that even if Taylor paid the balance of the $9,600 purchase money, due to Crosby, he had much more than reimbursed himself by appropriating to his own use money realized from the sale of appellant's land, and that appellant consequently had in legal effect furnished the whole of the purchase money for the entire 30 sections. We are therefore of the opinion, as before stated, that, under the law, the facts as found by the jury are sufficient to place and did vest the entire equitable title to the land in controversy in appellant. Sparks v. Taylor, 99 Tex. 424, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700; Ullmann v. Jasper, 70 Tex. 446, 7 S. W. 763; McBride v. Banguss, 65 Tex. 179; Schuster v. Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; Sinsheimer v. Kahn, 6 Tex. Civ. App. 143, 24 S. W. 533; Aultman v. George, 12 Tex. Civ. App. 457, 34 S. W. 652; Cavil v. Walker, 7 Tex. Civ. App. 305, 26 S. W. 854.

[5] We are further of the opinion that under the findings of the jury, and especially under the answers to the fourth and ninth special issues, to the effect that the deed from Taylor to Sparks was executed, acknowledged, and recorded on March 3, 1902, and antedated so as to appear to be dated, filed, and recorded on March 1, 1902, that said deed was void as to appellant under article 2983, Revised Statutes of Texas, in that at the time of its execution appellant had instituted her suit for divorce against J. W. Taylor, and that said deed was in fraud of her rights in the land in controversy. The statute referred to reads as follows: "On and after the day on which the action for divorce shall be brought it shall not be lawful for the husband to contract any debts on account of the community nor to dispose of the lands belonging to the same; any alienations made by him after that time shall be null and void and if it be proved to the satisfaction of the court that such alienation was made with a fraudulent view of injuring the rights of the wife." The evidence, as shown by the findings of the jury, is conclusive and admits of no question as to the purpose of Taylor to defraud his wife of her rights in this land by making and recording said deed. In addition to the finding that the date, filing, and registration of said deed was fraudulently made to appear to have been of date 1st

of March, when such execution, filing, and registration should have been made to appear of date March 3d, the record throughout, as shown by the findings of the jury, showed a systematic purpose on the part of Taylor to defraud his wife in all transactions with reference to this land, and in no particular is there shown a compliance in good faith on his part with the contract made with her with reference to the same, and no other conclusion can be reached but that the deed to Sparks under which appellees hold was made for the express purpose of defrauding appellant of her interest in the land in controversy. The Supreme Court, on the former appeal of this case, declined to construe this statute as applied to the deed in question, because it appeared from the evidence before said court that the deed was made and recorded on the same day the suit was filed and it did not appear that the petition was filed at an hour prior to the making and recording of the deed and that, if the suit was in fact filed before the deed was made, appellant should have shown that fact by the evidence. The case here as presented to us eliminates this question and shows by the jury's finding that the suit for divorce had been filed prior to the execution of this deed.

[6] Appellees, however, contend that this statute refers solely to community property, and, as the jury found that the land in question was the separate property of plaintiff, the statute could not apply. We think a complete answer to this proposition is found in the language of the statute. The first part of the statute relates to contraction of debts by the husband on account of the community and the disposition of land belonging to the same. Following this language is a provision that any alienation made by him after that time shall be null and void if it be proved to the satisfaction of the court that such alienation was made with a fraudulent view of injuring the rights of the wife. We are of the opinion that this statutory language is broad enough and evidently intended to bring within the protection of the statute any alienation which the husband might make of property in which the wife had any interest when his purpose was to defraud the wife, and we think that we are further sustained in this construction of the statute in the present instance by the fact that the only power by which Taylor could have alienated the lands was by virtue of the fact that, because of his violation of his contract with appellant, and in fraud of her rights, the record title to these lands appeared in the community, in that they were purchased during the existence of the marital relation, and the deed was taken in the name of Taylor without any recitation as to the title being for the benefit of appellant or of any interest of hers therein.

[7] We are further of the opinion that even if we are in error in our holding as to the extent of appellant's interests in the land and she should be only entitled to such proportionate interest therein as her separate money used in its purchase bears to the entire purchase price, and should it be held that she contributed less than the entire purchase price, then the remaining interest in the land would undoubtedly be community property, and clearly her interest in the community property would be protected by the statute.

[8] Appellees also contend that no service was had upon Taylor in the divorce suit until after the 3d day of March, 1902, the date on which the deed appears, under the findings of the jury, to have been signed, acknowledged, and recorded. The language of the statute, however, does not require that service be had upon the husband before the statute becomes operative. The language of the statute is to the effect that it operates upon all conveyances, "on and after the day on which the action for divorce shall be brought." We therefore conclude that, the suit for divorce having been filed and the deed thereafter made by Taylor with fraudulent intent to injure the rights of appellant, under the statute as to the rights of appellant the deed to Sparks was absolutely void, and that these appellees, Meador Bros., deraigning their title and holding under said void deed, cannot be held to be bona fide purchasers as against the rights of appellant.

[9] Nor do we think there is any merit in the contention of appellees that, as the divorce suit was dismissed, no rights accrued to appellant thereunder, and that the title of appellees is not affected by said suit, being of the opinion that the rights of the parties claiming under said deed were fixed and determined by the invalidity of said deed at the time of its execution. We further think that there is no merit in this contention because it is shown by the record and the findings of the jury that on May 3, 1902, while said divorce suit was still pending, appellant instituted this suit to recover the land, and that in October, 1903, when the divorce suit was dismissed, the order of dismissal expressly provided that the same was without prejudice. Early in the following year the divorce suit was reinstated by appellant, and such suit resulted in final judgment in her favor for divorce and that her property rights were not adjudicated in that case but were left for determination in the present case then pending in the district court of Sherman county. We therefore conclude that, on account of the error of the court in not awarding title and possession of the entire lands sued for to appellant, this cause should be here reversed and remanded. Revised Statutes, art. 2983; Hagerty v. Harwell, 16 Tex. 663; Moore v. Moore, 73 Tex. 390, 11 S. W. 396; Berg v. Ingalls, 79 Tex. 522, 15 S. W. 579; Revised Statutes, art. 4642; Throckmorton v. Price, 28 Tex. 605, 91 Am. Dec. 334; Kennerd v. Mabry, 78 Tex. 156, 14 S. W. 272.

[10] In view of the adjustment of the equities that may be found to exist upon a new trial of this cause, we deem it proper to here state that in our opinion as under the law and facts, as shown by the findings of the jury, but for the statute above quoted, Meador Bros. would be entitled to protection as innocent purchasers of the land to the extent that they paid the purchase money before they had notice of Mrs. Taylor's interest in the land, and notwithstanding said statute, for the amount of the taxes paid by them, and inuring to appellant's benefit, and also for such amount as they may be able to show to the satisfaction of the court that J. W. Taylor would be entitled to on an adjustment of the matter of his one-half interest in the profits from the resale of said lands as provided in the contract between said Taylor and appellant, and that in securing said protection to appellees, the land being unimproved land, the more equitable rule to apply would be to declare a lien upon the land in controversy to secure the payment of the amount so found to be due appellees, and in ascertaining what the equities of the parties are it is permissible to inquire into the price paid for the land by appellees, the amount appropriated by Taylor from former sales with which appellees should be charged, the expenses of making sales of the lands, and the present value of the land remaining unsold. However, we concede it to be within the discretion of the trial court in securing the protection above indicated to appellees to award them a proportionate part of said land in the adjustment of their equity, if any, found as hereinabove indicated, instead of declaring a lien in their favor, as herein suggested, if in the opinion of the trial court such adjustment can be more equitably made by said partition, which should be made upon the basis of the value of the land so partitioned at the time of the trial. Sparks v. Taylor, 99 Tex. 427, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Durst v. Daugherty, 81 Tex. 650, 17 S. W. 388; Youst v. Martin, 3 Serg. & R. (Pa.) 423; 2 Pomeroy, Eq. § 750; Freeman v. Pullen, 130 Ala. 654, 31 South. 451; Baldwin v. Sager, 70 Ill. 509.

[11] In the absence of a statement of facts, we are unable to say that there was material error in the several actions of the court complained of by appellant's remaining assignments, and by appellee's cross-assignments, relating to the overruling and sustaining of exceptions to the pleadings, in admitting and refusing testimony, and in giving and refusing charges, and the same are accordingly overruled. Chicago, R. I. & G. Ry. Co. v. Barrett, 45 Tex. Civ. App. 73, 100 S. W. 800; Renfro v. Harris, 72 S. W. 237; Lockett v. Schurenberg, 60 Tex. 610; W. U. Tel. Co. v. Carter, 2 Tex. Civ. App. 624, 21 S. W. 688; Land v. Klein, 21 Tex. Civ. App. 3, 50 S. W. 638; Pullman Palace Car Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624.

As above stated, we conclude that this cause should be here reversed and remanded, and the costs of this appeal, with the exception of that pertaining to the statement of facts, hereinbefore considered, be taxed against the appellees, and it is, accordingly, so ordered.